(96 South. 250)

### HANOVER FIRE INS. CO. v. WOOD.
(6 Div. 417.)

(Supreme Court of Alabama. Feb. 8, 1923. Rehearing Denied May 3, 1923.)

**I. Principal and agent ⬡189(1)—In action of arrest, principal authority of agent must be alleged.**

A complaint which merely alleges that an agent did an act purporting to bind his principal is insufficient as against apt demurrer, since ·it should go further and allege that the agent was duly authorized to act for the principal in that behalf.

**2. Principal and agent ⬡189(1) — Allegation of authority of agent as to waiver or estoppel necessary.**

When it is alleged that an agent did some primary act which he was duly authorized to do, and a secondary and distinct effect is imputed to such act—as, for example, waiver or estoppel with respect to the pleader's previous conduct—it is not sufficient to allege the authority of the agent to do the primary act merely, but either the waiver or estoppel must be charged directly upon the principal, or it must be alleged that the agent was authorized to bind the principal as to such waiver or estoppel.

**3. Insurance ⬡641(1)—Pleading as to reinstatement of policy held insufficient for failure to allege authority of agent to reinstate.**

Where replication confessed a cancellation of policy sued on, but alleged that, "with a full knowledge (of the fact of cancellation) by the defendant, or its authorized agents, acting in the line and scope of their employment, the defendant, or its authorized agents (so acting),

did receive from the plaintiff the sum of $41.80, the amount of the premium for one year," it was insufficient for failing to allege authority of the agent to reinstate the policy.

**4. Insurance ⬡641(1)—Allegation as to authority of agent to deny liability insufficient.**

Allegation in replication that defendant insurer, acting by its duly authorized agents, denied liability, etc., held to sufficiently comprehend the authority of the agents as to the act charged, but a replication alleging only that "the duly authorized agents" of defendant denied its liability did not sufficiently show that they were authorized to thus act.

**5. Insurance ⬡392(1)—Retention of overdue premium as waiver of forfeiture.**

The ·receipt and retention of an overdue premium by the insurer is a waiver of forfeiture for nonpayment of the premium when due, but it cannot operate as a waiver of forfeiture for breach of the iron safe clause unless the receiving agent had authority to make such waiver, and unless he knew of the breach at the time he received the payment.

**6. Insurance ⬡668(15) — Mere retention of premium does not constitute waiver as matter of law.**

The mere retention of the unearned portion of a premium after forfeiture, though done with knowledge of the forfeiture, does not amount to a waiver as a matter of law.

**7. Insurance ⬡641(1)—Replication as to iron safe clause held insufficient.**

A replication to plea of insurer regarding breaches of the iron safe clause held insufficient in that it did not answer to one of the breaches set up in the plea—that is, plaintiff's failure to keep his books and inventories in some place not exposed to a fire which would destroy the building—and also an allegation of a breach that plaintiff did not produce his set of books and inventory, if any he had, showing his business, for the inspection of defendant.

**8. Insurance ⬡335(1) — Failure to produce books under iron safe clause bar to recovery.**

Breach of iron safe clause, requiring insured to produce his set ·of books and inventories showing his business for the inspection of the insurer, would bar a recovery on the policy.

**9. Insurance ⬡230—Premium paid by agent who advanced it need not be returned to insured on cancellation of policy.**

The fact that general insurance agents settled with the insurance company for the amount of premium due on fire policy which had not been collected from the insured, though it kept the policy in full force and effect, and prevented its cancellation as for nonpayment of the premium, was nevertheless not the equivalent of an actual payment of the premium by the insured, and the unearned portion of it was not required to be returned to insured as a part of act of cancellation; the insured not having actually paid any money to the company or its agent, nor incurred any obligation to the agent in that behalf.

---

⬡For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

10. Insurance ⬅️229(2)—Notice of cancellation held sufficient.

A notice that fire policy "is hereby canceled" will be construed as intended to operate according to the terms of the policy at the end of five days, and a complaint that the notice is inoperative because given in præsenti, instead of at the end of five days, is without merit.

McClellan, J., dissenting. Anderson, C. J., dissenting in part.

Appeal from Circuit Court, Jefferson County; C. B. Smith, Judge.

Action by W. J. Wood against the Hanover Fire Insurance Company. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

The action is on a fire insurance policy by which defendant insured plaintiff's stock of merchandise and store furniture and fixtures for one year for $2,000. It is alleged that the policy was issued on June 27 or 29, 1919, and that the insured property was destroyed by fire on December 5, 1919.

Besides the general issue defendant pleaded pleas numbered 2 to 13. Demurrers were sustained to pleas 2, 3, 10, and 11.

Plea 4 sets up want of consideration.

Plea 5 recites the provisions of the policy requiring immediate notice to the insurer of loss; the making of a complete inventory of the damaged and undamaged property, and the amount claimed thereon; and the rendition within 60 days after the fire of a sworn statement of the knowledge and belief of the insured as to the time and origin of the fire, and the various other matters customarily required to be thus reported. The plea then recited the provision that no suit can be maintained on the policy until after full compliance with the recited provisions and alleges plaintiff's failure to comply, in that he returned no inventory, made no sworn statement, and filed no proof of loss.

To plea 5 plaintiff replied:

"H. That before the commencement of this suit the defendant company, acting by its duly authorized agents and representatives, who were acting within the line and scope of their employment, after said fire and with knowledge of plaintiff's claim under said policy, denied all liability on the policy sued on upon the ground that the said policy had been canceled before the alleged fire occurred."

"J. That before the commencement of this suit, the duly authorized agents of the defendant company with knowledge or notice of said fire, and plaintiff's loss thereby, denied to plaintiff any and all liability under said policy making it unnecessary for the plaintiff to furnish proof of loss as provided by said policy."

Plea 6 recites the provision:

"This policy shall be canceled at any time at the request of the insured or by the company by giving five days' notice of such cancellation."

And it then alleges that, more than five days before the fire, "this defendant, acting through its local agent, did, on, to wit, November 21, 1919, notify the plaintiff that according to the terms and conditions of the policy sued on said policy is hereby canceled," and that, before said fire occurred, the policy had become canceled, and that, plaintiff not having paid the premium due thereon, there was no unearned premium due to him.

To plea 6 plaintiff replied:

"D. That after the alleged cancellation of said policy, and after the alleged breach of the stipulations in said policy that are pleaded by defendant in bar of this action, and with a full knowledge by the defendant, or its authorized agents acting in the line and scope of their employment, the defendant, or its authorized agents acting in the line and scope of their employment, did receive from the plaintiff the sum of $41.80, the amount of the premium on said policy for one year,"

—thereby estopping itself as to the defense pleaded.

Plea 7 recites the provisions of the policy requiring the assured (1) to take a complete itemized inventory of stock on hand at least once a year, and, if not taken previous to policy, to be taken within 30 days from issuance; (2) to keep a set of books showing clearly all business transacted during life of policy, including purchases, sales, and shipments; and (3) to keep such books and inventory securely locked in an iron fireproof safe at night, and at all times when the building is not open for business, or, failing in this, to keep them "in some place not exposed to a fire which would destroy the aforesaid building." It recites also the provision:

"(4) In the event of failure to produce such set of books and inventories for the inspection of this company, this policy shall become null and void, and such failure shall constitute a perpetual bar to any recovery thereon."

The plea then alleges a failure by defendant to observe the provisions numbered 1, 2, and 3.

To plea 7 were pleaded replications C, D, L, M, and O.

Replication C is:

"That the defendant company, acting by and through its duly authorized agents, who were acting in the line and scope of their employment and authority, with a full knowledge that plaintiff did not have on his premises or in his store an iron safe, and that he had been relieved by defendant's agent, acting in the line and scope of his authority, of the duty to comply with the terms of said policy, pleaded as aforesaid, did receive and accept the sum of, to wit, $41.80, the amount of the pre-

mium due on said policy for the term of one year."

Replication D has been heretofore set out.

Replication L sets up a waiver of the provisions of the "iron safe clause" as to the mode of safe-keeping plaintiff's books, made with full knowledge of plaintiff's noncompliance, and with agreement thereto.

Replication M sets up a preagreement with plaintiff by defendant's agents, acting with full knowledge and in the line and scope of their employment—

"that it would not be necessary for him to have an iron safe, and that his papers, inventories and books * * * might be kept without said iron safe, and in said insured building, and defendant issued said policy with that understanding."

Replication O is substantially the same as C.

Plea 8 is like plea 7, except it alleges merely that plaintiff did not keep a set of books as required.

Plea 9 is also like plea 7, except it alleges that plaintiff took no inventories of stock within the periods prescribed.

Plea 12 sets up the cancellation provisions shown by plea 6, and alleges:

That more than five days before the fire, and five days prior to November 21, 1919, defendant, through its agent in Birmingham, "notified the plaintiff that the policy here sued on would be canceled; and that on, to wit, November 21, 1919, defendant, through its local agent * * * notified the plaintiff that, according to the terms and conditions of the policy sued on, said policy was canceled, and was not a binding obligation on this defendant."

To this plea was interposed replication D, above set out.

Plea 13 is the same as plea 7 down through the provisions numbered 1 to 4, inclusive, and alleges a violation of provisions 3 and 4. To this plea replications C, D, L, M, and O, above shown, were interposed.

Demurrers were sustained as to all other pleas and replications than those above set out, and demurrers were sustained also to defendant's special rejoinders to the replications.

On the foregoing pleadings the case was submitted to the jury, under the instructions of the court, and there was a verdict for plaintiff, and judgment accordingly.

Coleman & Coleman & Spain, of Birmingham, for appellant.

An agent, who is only authorized to solicit and take applications for insurance and receive premiums, and deliver the policy after having been signed by the proper officers, has no authority, express or implied, to waive a breach of a condition. Queen Insurance Co. v. Young, 86 Ala. 431, 5 South. 116, 11 Am. St. Rep. 51; Ala. State Mutual Ins. Co. v. Long, 123 Ala. 677, 26 South. 655; Cassimus Bros. v. Scottish Union Ins. Co., 135 Ala. 270, 33 South. 163; Ætna Ins. Co. v. Kennedy, 161 Ala. 607, 50 South. 73, 135 Am. St. Rep. 160; Prine v. American Central Ins. Co., 171 Ala. 343, 54 South. 547. Where a mere local agent is depended upon as having authority to receive notice of a breach of conditions, the burden of showing his authority extended so far rests upon the assured. Ala. State Mutual Ins. Co. v. Long, supra; Southern States Ins. Co. v. Kroneburg, 199 Ala. 171, 74 South. 63. Notice to an agent is notice to the principal only when it is acquired while engaged in the business of the principal, within the scope of his authority, and respecting a transaction then pending. Hill & Fontaine v. Helton, 80 Ala. 528, 1 South. 340; Queen Ins. Co. v. Young, 86 Ala. 431, 5 South. 116, 11 Am. St. Rep. 51. A clerk employed by an agent of an insurance company to do clerical work in his office cannot be regarded as the agent of the insurance company, nor can the agent of the insurance company delegate to such a clerical assistant authority to waive a forfeiture without the consent of the company. Waldman v. North British Mercantile Ins. Co., 91 Ala. 170, 8 South. 666, 24 Am. St. Rep. 883. "The iron safe clause" is a reasonable condition, and a valid ground of forfeiture, unless substantially complied with by the insured. Georgia Home Ins. Co. v. Allen, 119 Ala. 448, 24 South. 399; Day v. Home Ins. Co., 177 Ala. 601, 58 South. 549, 40 L. R. A. (N. S.) 652; Insurance Co. v. Williams, 200 Ala. 681, 77 South. 159; Fidelity Phœnix Ins. Co. v. Williams, 200 Ala. 678, 77 South. 156.

Allen & McEwen, of Birmingham, for appellee.

The extent and scope of the power and authority of an agent is a question for the jury. 1 May, Ins. § 126; Robinson v. Ætna Ins. Co., 128 Ala. 477, 30 South. 665; So. Fire Ins. Co. v. Kronenberg, 199 Ala. 164, 74 South. 63. Ostensible powers and authorities of an agent cannot be narrowed by secret instructions without notice to party dealing with such agent. Kramer v. Compton, 166 Ala. 216, 52 South. 351; Standard Co. v. McMahon, 203 Ala. 158, 82 South. 191. If an insurance policy is issued to an insured, and credit extended to him by the agent, said premium becomes a debt due by the insured, and amounts to such payment that the company cannot cancel the policy for nonpayment. 19 Cyc. 607; 13 L. R. A. (N. S.) 889, note; Insurance Co. v. Raden, 87 Ala. 311, 5 South. 876, 13 Am. St. Rep. 36; Farmers' Mut. Ass'n v. Tankersley, 13 Ala. App. 524, 69 South. 411. Insurance policies are construed liberally in favor of the insured. Sov. Camp. v. Craft, 208 Ala. 467, 94 South. 833. The acceptance and retention of premium is a waiver of forfeiture. Sec. Mut. L. I. Co. v. Riley, 157 Ala. 553, 47 South. 735; Insurance Co. v. Eubanks, 94 South. 198.

SOMERVILLE, J. [1] "Where one is sought to be charged with the act of another, proof of the authority under which the act was done is indispensable; * * * and as the evidence must harmonize with the pleading, it should be substantially, yet distinctly, alleged that the act was the principal's, or authorized by him." Childress v. Miller, 4 Ala. 447, 450. So, where the complaint alleges merely that an agent did an act purporting to bind his principal, it is insufficient as against apt demurrer. It should go further and allege that the agent was duly authorized to act for the principal in that behalf. May v. Kelly, 27 Ala. 497, 502. In that case the complaint alleged that one Bell, the captain and master of a steamboat, and the agent of its owners, as such captain and agent, accepted a draft "for steamship messenger and owners," the suit being against the owner upon the acceptance. The court said:

"Bell may have been the agent of the owner of the steamboat, and the agent of the defendant, and yet have had no authority to accept any bill for the defendant. It was not enough to aver that Bell was the agent of the defendant. It was incumbent on the plaintiffs to know the extent and nature of his authority as agent, or, at all events, to have alleged that his agency embraced or authorized the acceptance of the bill."

[2] On this principle, when it is alleged that the agent did some primary act which he was duly authorized to do, and a secondary and distinct effect is imputed to such act—as, for example, waiver or estoppel with respect to the pleader's previous conduct—it is not sufficient to allege the authority of the agent to do the primary act merely; but either the waiver or estoppel must be charged directly upon the principal, or it must be alleged that the agent was authorized to bind the principal as to such waiver or estoppel.

[3] Plea 6 sets up a cancellation of the policy by the insurer on five days' notice, as authorized by the terms of the policy. Replication D confesses the cancellation, but seeks to avoid its effect by showing that thereafter the insured paid the premium of $41.80, by which, it is implied, the policy was reinstated. The allegation is that—

"with a full knowledge [of the fact of cancellation] by the defendant, or its authorized agents, acting in the line and scope of their employment, the defendant, or its authorized agents [so acting], did receive from the plaintiff the sum of $41.80, the amount of the premium for one year."

Had the replication alleged simply that the defendant, with such knowledge, received the unpaid premium, the legal implication would have been, prima facie, the reinstatement of the policy and its continuation as a contract of insurance. But the reception of the premium by an agent could have no such result unless the agent was authorized to waive and set aside the cancellation— an authority of equal grade with the authority to issue the policy originally—or unless the company, with knowledge of the payment through the knowledge of an agent so authorized, fails to repudiate the payment and return the money to the insured within a reasonable time after such knowledge was acquired.

According to the testimony of defendant's witnesses, plaintiff went to the office of defendant's agents in Birmingham (who issued the policy and seemed to have general authority and powers with respect thereto), and paid his delinquent premium to a young woman clerk, who was authorized to receive payments of money due for premiums, but who had no authority to issue policies or to deal with them in any way as contracts of insurance. There was abundant evidence to support defendant's plea of cancellation; and, if the jury had so found, and if they had further believed defendant's testimony as to the circumstances of the payment relied on by plaintiff, and as to the efforts of defendant's responsible agents to return the money to plaintiff as soon as they learned of its payment, they would have been bound, under the law, to return a verdict for defendant, so far as this issue was concerned.

Very clearly, we think, replication D is defective in not alleging that the premium payment was received by an agent of defendant who had authority to reinstate the canceled policy. This defect was aptly pointed out by the twenty-fourth ground of demurrer, which should have been sustained. The instructions given to the jury by the trial judge do not so clearly draw the distinction noted as to cure the error in overruling the demurrer, and we think it probable, from our study of the record, that this was a matter of controlling importance in the rendition of the jury's verdict.

Replication O is subject to the same defect as D, and for the same reason the demurrer thereto should have been sustained.

[4] Replication H to plea 5 is not thus defective in its allegations, for it alleges that the defendant company, acting by its duly authorized agents, denied liability, etc., which sufficiently comprehends the authority of the agents as to the act charged. 2 Corp. Jur. 905, § 611; Childress v. Miller, 4 Ala. 447, 451. On the other hand, replication J alleges only that "the duly authorized agents" of defendant denied its liability, which does not sufficiently show that they were authorized to thus act for and bind the company; since they may have been duly authorized agents, with authority to do other things, but not the thing in question. Prine v. Am. Cent. Ins. Co., 171 Ala. 343, 54 South. 547; Ala. State Mut. Ass'n Co. v.

Long, etc., Co., 123 Ala. 667, 26 South. 655. For this reason the demurrer should have been sustained to the latter replication. We remark, however, that the error was technical merely, since there was no real dispute as to the fact of such denial of liability by an agent duly authorized in that behalf, the legal effect of which was to avoid the breaches charged in the plea by waiving the performance of the stipulations in question. Continental Ins. Co. v. Parkes, 142 Ala. 650, 39 South. 204.

[5, 6] The receipt and retention of an overdue premium by the insurer is a waiver of forfeiture for nonpayment of the premium when due. Security Mut. Life Ins. Co. v. Riley, 157 Ala. 553, 47 South. 735. But it cannot operate as a waiver of forfeiture for breach of the iron safe clause unless the receiving agent had authority to make such a waiver, and unless he knew of the breach at the time he received the payment. Nor does the mere retention of the unearned portion of a premium after forfeiture, though done with knowledge of the forfeiture, amount to a waiver as a matter of law. Ala. State. Mut. Ass'n Co., v. Long, etc., Co., 123 Ala. 667, 678, 26 South. 655.

[7] Replications L and M, as answers to plea 7, were not subject to the demurrer, since they allege an express waiver of the iron safe clause by agents of the insurer, acting in the line and scope of their employment, with full knowledge of the facts. But replication C to plea 7 is insufficient, in that it does not answer to one of the breaches set up in the plea, viz. plaintiff's failure to keep his books and inventories in some place not exposed to a fire which would destroy the building. Replication C is insufficient, also, as an answer to plea 13, in that it does not answer to one of the breaches set up in that plea, viz. that plaintiff did not produce his set of books and inventory, if any he had, showing his business, for the inspection of defendant. These defects are aptly pointed out by the grounds of demurrer numbered 20 and 22, which should have been sustained.

[8] Plea 10, to which demurrer was sustained, was the same in substance as plea 7, with the additional averment that—

"This plaintiff did not produce his set of books and inventories showing his business, for the inspection of this company, as was required," etc.

The breach of that provision would be a bar to recovery on the policy. Chamberlain v. Shawnee Fire Ins. Co., 177 Ala. 516, 58 South. 267. We find no ground of demurrer to plea 10 nor to that part of it above quoted, which could properly be sustained, and we think the demurrer to that plea should have been overruled.

The errors above noted require a reversal of the judgment, to the end that the case may be retried upon issues appropriately framed in the pleadings.

Appellant's contention that the evidence failed to show such general authority in its Birmingham agent, the Kendrick-Houseal Real Estate & Insurance Company, as to bind the company by such agent's acts of waiver, estoppel, or reinstatement, cannot be sustained. On the contrary, the evidence clearly supports the conclusion that the Kendrick-Houseal Company was the general agent of the defendant company, and therefore authorized to waive compliance with the provisions of the iron safe clause, or to waive a forfeiture for the breach thereof, or to reinstate the policy after its voluntary cancellation. On the other hand, it is clear that the office clerk to whom, according to defendant's evidence, the amount of the premium was paid after the alleged cancellation of the policy was not the agent of defendant, though in the service of defendant's agent, and that, with or without knowledge of forfeiture or cancellation, she could not bind defendant by either express or implied waiver of a forfeiture, nor by reinstatement of a canceled policy. Waldman v. N. B. & M. Ins. Co., 91 Ala. 170, 8 South. 666, 24 Am. St. Rep. 889.

With respect to the alleged cancellation of the policy by defendant, and in denial of its validity, plaintiff makes two contentions: (1) That the cancellation was not effective because defendant did not return to plaintiff the unearned portion of the premium; and (2) that it was inoperative, in any event, because notice was given as of a cancellation in præsenti instead of at the end of five days.

[9] The first contention is not well taken. The fact that the general agent settled with the insurance company for the amount of the premium which had not been collected from the insured, though it kept the policy in full force and effect, and prevented its cancellation as for nonpayment of the premium, was nevertheless not the equivalent of an actual payment of the premium by the insured—the express condition upon which the unearned portion of it was required to be returned as a part of the act of cancellation; and, not having actually paid any money to the company or its agent, nor incurred any obligation to the agent in that behalf, the insured would not be entitled, either in law or in good conscience, to have anything returned to him. We construe the words "actually paid," as used in the policy in that connection, as meaning actually paid by the insured with his own money or credit, and not merely constructively paid for his account by the agent of the insurer, without any agreement with the insured to do so, and without any extension of credit to him. As to these circumstances the evidence is in conflict.

This view is not in conflict with the case of Buckley v. Citizens' Ins. Co., 188 N. Y. 399, 81 N. E. 165, 13 L. R. A. (N. S.) 889, where the circumstances held to amount to "actual payment," and so to require the return of the unearned premium as a condition to cancellation, were materially different.

[10] We think the objection to the form of the notice of cancellation is technical and without merit. It is true the notice declares that the policy "is hereby canceled," whereas the policy provides that it may be canceled at any time by the company "by giving five days' notice of such cancellation." Nevertheless such declaration will be intended as operative, according to the terms of the policy, at the end of five days after notice thereof.

The giving and refusal of several requested instructions is complained of, but those assignments of error need not be specially dealt with, in view of what has been already said, and as those instructions may not be requested again in the same form.

Let the judgment be reversed, and the cause remanded for another trial.

Reversed and remanded.

SAYRE, GARDNER, THOMAS, and MILLER, JJ., concur.

ANDERSON, C. J., dissents in part, but concurs in reversal of judgment.

McCLELLAN, J. (dissenting). The chief defenses asserted against plaintiff's (appellee's) right to recover on the fire insurance policy declared on were (a) that the policy had been canceled prior to the loss of the property insured; and (b) that breach or violation of the "iron safe clause" in this policy avoided the insurer's liability in the premises.

The fire insurance policy sued on contained, among others, these provisions:

"This policy shall be canceled at any time at the request of the insured; or by the company by giving five days' notice of such cancellation. If this policy shall be canceled as hereinbefore provided, * * * the premium having been actually paid, the unearned portion shall be* returned on surrender of this policy or last renewal, this company retaining the customary short rate, except that when this policy is canceled by this company by giving notice it shall retain only the pro rata premium."

The terms, conditions, duties, and obligations of a contract of insurance will be liberally construed in favor of the insured. 8 Mich. Ala. Dig. pp. 813, 814, § 44 (2 and 3). Under the quoted provisions of this policy, cancellation by the company could not be effected unless and until the company returned to the insured the unearned pro rata of the premium actually paid, the compensation retained being at the "customary short

rate." Buckley v. Citizens' Ins. Co., 188 N. Y. 399, 81 N. E. 165, 13 L. R. A. (N. S.) 889, annotated. The phrase "actually paid," as employed in the quotation from this policy, does not stipulate, for the purpose of cancellation, that the premium's payment shall have been made to the company, the insurer, by the insured either directly and immediately or in person. Such actual payment as is stipulated might be efficiently made by another for the insured. The essence of the stipulation "actually paid" is that the insurer should have received the policy's premium; cancellation on the insurer's initiation being dependent for accomplishment upon restoration to the insured of the appropriate unearned pro rata of the policy's premium received by the insurer. To read the stipulation in question as exacting direct, immediate payment in person by the insured is to interpolate terms' in the policy not there found. If, however, the stipulation in question was ambiguous, the stated rule of construction requires strict interpretation against the insurer and a liberal interpretation in favor of the insured; and the application of this rule of construction in the present instance is especially invited by the fact that the insurer is undertaking to assert and enforce a right, particularly defined in the policy, to terminate the contract and to extinguish liability thereunder during the period of it was in force unless sooner canceled.

The undisputed evidence went to show that the insurer's agent, Kendrick-Houseal Real Estate & Insurance Company, had, in September, 1919, paid the insurer the full premium for one year from June 27, 1919, on the policy sued on. Miss Bennett testified:

"At the time I received this money [i. e. the money plaintiff paid to her on December 5, 1919] we had already paid the premium to the Hanover Insurance Company. We paid to the Hanover Insurance Company in September the premium on the policy issued to Mr. Wood [the plaintiff]."

The witness Houseal also testified, in reference to the premium on this policy:

"In this particular case the policy was written in June, 1919, and in September we paid to the company in a lump sum or all the business that was written in the month of June."

The premium on this policy for one year from June 27, 1919, having been paid to the insurer by the Kendrick-Houseal Company, the insured thereupon became indebted and legally liable to the Kendrick-Houseal Company for the amount of the premium so paid. The obligation thus created was between the insured and the Kendrick-Houseal Company; the insurance company's demand for the whole annual premium having been satisfied by the payment stated. Buckley v. Citizens' Ins. Co., 188 N. Y. 399, 81 N. E. 165, 13 L. R. A. (N. S.) 889, 892. The Buckley Case, supra, is in point. The fact that there the insured

gave his note for the premium in question (with others) the agents subsequently paid to the insurer does not discriminate that cause from the present contest. Upon the payment of the premium, the quoted stipulation of this policy exacted the return to the insured of the unearned portion of the premium as a condition precedent to the effectual cancellation of the policy. There was no premium return of any kind made by the insurance company to the insured. Obviously this condition precedent to cancellation of the policy by the insurer could not be afforded by a return of premium to the Kendrick-Houseal Company. No cancellation of the policy under its terms having been accomplished before the destruction of the insured's property by fire, the only meritorious defense remaining and asserted was the breach of the "iron safe clause." The matters arising out of the payment, on December 5, 1919, by Wood to Kendrick, or to Miss Bennett, clerk in the Kendrick-Houseal Company's office, of the amount of the annual premium were and are wholly immaterial to the issues in the cause; no cancellation having been effected because no return of unearned premium to the insured was made by the insurer in accordance with the prescriptions of the policy. In paying $41.80 to Kendrick or to Miss Bennett on December 5, 1919, Wood was simply and effectually discharging his obligation to the Kendrick-Houseal Company, that had, in September, 1919, paid the insurance company the premium on this policy. There is in the case no real issue or waiver by any one of a forfeiture effected through cancellation by the insurer.

The writer, therefore, is unable to concur in a reversal of the judgment attained without regard to the fact that no cancellation of the policy, under its terms, was effected before the loss by fire.

Replication C, interposed to pleas asserting plaintiff's breach of the "iron safe clause," reads:

"C. For further replication to said pleas, the plaintiff says that the defendant company, acting by and through its duly authorized agents who were acting in the line and scope of their employment and authority, with a full knowledge that plaintiff did not have on his premises or in his store an iron safe, and that he had been relieved by the defendant's agent, acting in the line and scope of his authority, of the duty to comply with the terms of the said policy, pleaded as aforesaid, did receive, accept and keep the sum of, to wit, $41.80, the amount of the premium due on said policy for the term of one year."

In the writer's opinion, replication C was not subject to the demurrer. The criticisms of replication C, taken in the majority opinion as expressed in grounds 20 and 22 of the demurrer, are that it does not answer the plea's allegation of failure to keep insured's books and inventories in some place not exposed to fire, which would destroy the building, or to produce his set of books and inventory. These criticisms but contradict material averment of replication C, viz. that insured "had been relieved by the defendant's" authorized agent "of the duty to comply with the terms of the policy pleaded as aforesaid," meaning the terms of the policy set up in the pleas whereby defendant sought to conclude plaintiff's right to recover because of his failure to produce the books and inventory, as well as his failure to preserve them from the hazards of fire. The material issues, aside from ineffectual cancellation, were contested in the evidence.

The judgment should, in the writer's opinion, be affirmed.