**PATERSON & EDEY LUMBER CO. v. CAROLINA–PORTLAND CEMENT CO.**
**(6 Div. 565.)**

Supreme Court of Alabama. March 31, 1927.

1. Assignments ⬤═121—Action for sales agent's breach of contract held properly brought in principal's name, for its assignee's use.

Action for agent's breach of contract to sell lumber *held* properly brought in principal's name, for use and benefit of its assignee.

2. Contracts ⬤═35—Contract which parties agree shall not be binding until signed by both cannot be enforced by either until signed.

While contract accepted and acted on need not be signed, unless required by statute or arbitrary rule to be in writing, unsigned contract cannot be enforced by either party, however completely it expresses their mutual agreement, if it was also agreed that it should not be binding until signed by both.

3. Principal and agent ⬤═79(4)—Sales agent's unsigned contract and complaint for breach thereof held to show that its executive officer's approval was to be manifested by signature, so as to require contrary averment.

Counts of complaint for agent's breach of unsigned written contract to sell lumber, together with contract itself and telegram announcing mailing of "signed contract," *held* to show at least by implication, that approval of defendant corporation's executive officer was to be manifested by signature to contract, and hence demurrable as not averring that approval other than by signature was agreed on or intended.

4. Pleading ⬤═34(4)—Complaint for breach of contract not signed by defendant must be construed most strongly against plaintiff.

Counts of complaint praying recovery for breach of contract, not signed by defendant, must be construed most strongly against plaintiff.

5. Contracts ⬤═28(1)—Burden is on one suing for breach of unsigned contract to show binding, enforceable contract.

Burden is on plaintiff, in action for breach of contract not signed by defendant, to show binding and enforceable contract.

6. Pleading ⬤═53(1)—Sufficiency of each count of complaint must be tested by averments thereof without reference to other counts not adopted by reference.

Several counts of complaint are considered separate and distinct and their sufficiency tested by averments thereof without reference to other counts, unless adopted by reference to save repetition.

7. Pleading ⬤═53(2)—Counts for breach of oral contract, alleged to have been made by defendant's duly authorized agent, held not repugnant to counts for breach of written contract requiring approval of defendant's executive officer.

Counts of complaint for breach of oral contract, expressly alleged to have been entered into by defendant's duly authorized agent, *held* not inconsistent with and repugnant to counts for breach of written contract, which was to replace oral contract when approved by defendant's executive officer; reference being made to written contract in counts on oral contract only for collateral purpose of fixing duration of latter.

8. Principal and agent ⬤═79(4)—Counts of complaint for sales agent's breaches of oral contract held sufficient.

Counts of complaint for agent's breaches of oral contract to sell lumber *held* sufficient as

definitely setting up effective date, timber covered, and duration, sufficiently showing salient terms and plaintiff's compliance with all conditions precedent and readiness to meet all subsequent obligations, and clearly stating breaches relied on without assigning more than one in same count on same stipulation.

**9. Pleading ⊂═53(2)—One breach of each of several stipulations of contract may be assigned in one count of complaint.**

It is permissible to assign one breach of each of several stipulations in one count of complaint for breaches of contract.

**10. Principal and agent ⊂═79(4)—Counts for agent's breaches of oral contract to sell lumber, alleging that plaintiff manufactured lumber at great expense, was prevented by contract from selling it at profit, etc., definitely stated natural and proximate damages.**

Averments of counts of complaint for breaches of oral contract to sell lumber for manufacturer, that plaintiff manufactured 600,000 feet of lumber at great expense, was prevented by its contract obligations from selling lumber on open market at profit, and was able to realize considerably less than contract price by diligent effort after breach, definitely stated damages neither remote, uncertain, nor speculative, but naturally and proximately flowing from breaches relied on.

**11. Principal and agent ⊂═189(1)—Count of complaint for breach of oral contract, "entered into between plaintiff and defendant," held not defective in not stating what authorized agent of defendant made contract.**

Count of complaint for breach of oral contract, averring that contract was entered into between plaintiff and defendant, without mentioning an agent, *held* not defective in not stating what authorized agent of defendant made contract.

Appeal from Circuit Court, Jefferson County; C. B. Smith, Judge.

Action by the Paterson & Edey Lumber Company, for the use and benefit of J. E. Paterson, against the Carolina-Portland Cement Company. Plaintiff takes a nonsuit and appeals from adverse rulings on pleading. Reversed and remanded.

The written contract involved is, in substance, as follows:

"State of Alabama, County of Mobile:

"This agreement, made and entered into this, the —— day of ——, 1920, by and between the Carolina Portland Cement Company, of Atlanta, Ga., a corporation, organized and existing under the laws of the state of South Carolina, party of the first part, and Paterson & Edey Lumber Company, Inc., of Mobile, Ala., a corporation organized and existing under the laws of the state of Alabama, party of the second part, witnesseth:

"That, whereas, the party of the second part is the owner of milling facilities, yards, lumber, sawmills, and all facilities for the cutting of timber and the manufacture of lumber, and is the owner of hard wood stumpage and timber in the raw state, for the purpose of being manufactured into hardwood lumber; and whereas, the party of the first part is engaged in the business of buying and selling lumber, and has facilities for the sale thereof, through its agents and representatives; and whereas, the manufacture of lumber and the stacking and hauling thereof involves a large expense; and whereas, it is to the interest of both parties hereto to enter into this contract:

"Now, therefore, in consideration of the premises and of the sum of one ($1.00) dollar in hand paid by the party of the first part to the party of the second part, the receipt whereof is hereby acknowledged, the parties hereto agree as follows:

"The party of the second part agrees as follows:

"(1) That it will manufacture into lumber all hard wood timber produced by the timber lands owned, leased, or with reference to which it has contracts, and all hardwood timber as to the delivery of which it has contracts existing at the date of the execution of this contract, for delivery under the terms of this contract."

(2) Provides for cutting of lumber to sizes directed by first party.

(3) Provides in detail for stacking and drying of hard wood lumber.

"(4) That all lumber manufactured for the first party shall be loaded f. o. b. cars at Mobile, and shipped on the orders of the first party."

(5) Provides as to bill of sale and marking of lumber upon which the first party has made advance payment.

(6) Provides for stacking of different grades, sizes and species of green lumber.

(7) Provides for interest upon advances made by the first party.

(8) Regulates, in detail, how the prices at which lumber shall be sold by the first party shall be determined: (a) As to lumber on which no advances have been made; and (b) as to lumber on which advances have been made.

(9) Provides for procedure where lumber is subject to lien of third parties.

(10) Provides further for discharge of any lien which may be created against lumber as to which the first party has made advances.

(11) Provides that the expense of inspection of lumber manufactured under this contract be borne by the second party.

(12) Provides that all lumber upon which advances have been made shall be insured by the second party for the interest of the first party.

"The party of the first part agrees":

(1) That it will advance upon all hard wood lumber cut, stacked and stored as provided, in lots of 100,000 feet, at periods of not less than every two weeks, $40 per thousand feet, provided the second party shall execute recordable bill of sale to same, free from liens, etc., as above provided.

"(2) That it will sell all such lumber at and for prices to be fixed in the following manner:

"(a) With respect to sales of such lumber on which no advances have been made by the Carolina Portland Cement Company, the Caro-

lina Portland Cement Company shall submit to the Paterson & Edey Lumber Company for approval and acceptance or rejection the prices at which they propose to sell such lumber, and if the prices are not satisfactory the Paterson & Edey Lumber Company shall not be bound to fill such orders.

"(b) With respect to lumber on which advances have been made by the Carolina Portland Cement Company to the Paterson & Edey Lumber Company, Inc., the Carolina Portland Cement Company shall have the right to make sales at such prices as may be fixed by them, which are not substantially and appreciably below the ruling market price at the time when each such sale is made, provided, however, that the Carolina Portland Cement Company shall give the Paterson & Edey Lumber Company notice in writing of each such sale, stating the name of the consignee and the price at which said sale is made within ten days after each such sale is made, otherwise Paterson & Edey Lumber Company shall have the right to refuse to fill such order.

"(3) That upon the delivery of the lumber f. o. b. cars Mobile, Ala., and the receipt by the party of the first part at Atlanta, Ga., at railroad bill of lading therefor, the party of the first part shall remit to the party of the second part the sale price of the said lumber so loaded f. o. b. cars Mobile, Ala., less the amount of the advance theretofore made thereon, upon the basis of $40 per thousand, plus the interest from the date of such advance to the date of the receipt at Atlanta, Ga., of the said bill of lading; and less also:

"(a) 12½ per cent. of the gross amount of said sale price on all lumber in respect of which advances have been made by the Carolina Portland Cement Company to the Paterson & Edey Lumber Company, Inc.;

"(b) 7½ per cent. of the amount of gross sale price on lumber in respect of which no advances have been made by the Carolina Portland Cement Company to the Paterson & Edey Lumber Company.

"Which it is hereby agreed shall be the compensation to the party of the first part for the use of its facilities and the expense incurred by it in the sale of said lumber, less 2 per cent. off of such invoice sale price as cash discount; and less also such expense as may be chargeable for salary and expense of the inspectors, as hereinbefore provided. The Carolina Portland Cement Company assumes the responsibility of the collection for all sales, and the Paterson & Edey Lumber Company, Inc., shall not be debited with or responsible for any amounts not collected on account of sales.

"The parties hereto jointly agree:

"(1) That either party hereto may cancel this agreement upon two weeks' written notice to the other party; provided, however, that all lumber manufactured between the time of the receipt of such notice and the expiration of the two weeks shall be delivered under the terms of this agreement.

"(2) This contract shall be governed in all instances by the sales code and inspection rules of the American Hardwood Manufacturers Association, inspection at mill, to be final, conclusive and binding.

"In witness whereof, the parties hereto have executed this agreement, in duplicate, the day and year first above written.

"Carolina Portland Cement Company,
    "By ―――――.
"Signed, sealed and delivered in the presence of:
    "―――――.
    "―――――,
"Notary Public, Mobile County, Alabama.
    "Paterson & Edey Lumber Company,
    "By ―――――.
"Signed, sealed and delivered in the presence of:
    "―――――.
    "―――――,
"Notary Public, Mobile County, Alabama."

Count FF, typical of the other counts based upon breach of an oral contract, alleges that on May 15, 1920, the Paterson Company and the Carolina Company, acting through its agent, F. A. Brewer, thereunto duly authorized, entered into negotiations with reference to the sale by the Carolina Company for the Paterson Company of certain hard wood lumber, and a written contract between said parties was drawn providing the terms, conditions upon, and the manner in which the Carolina Company would undertake to sell lumber to be manufactured by the Paterson Company, which written contract, duly signed by the proper officers of the Paterson Company, was subject to the approval of, and was not to be effective unless and until it was approved by, an executive officer of the Carolina Company; that it was thereupon orally and mutually agreed by and between said Paterson Company and said Carolina Company, acting through its agent, F. A. Brewer, thereunto duly authorized, "that pending the execution of said written contract by said Carolina Portland Cement Company, and, if not executed by it, the time when said Carolina Company definitely notified Paterson & Edey Lumber Company that it would not execute such contract, the said Carolina Company would sell all of the hard wood lumber manufactured by the said Paterson & Edey Company at its said mill, at and for prices to average not less than $70 per thousand feet, board measure, for all of said lumber, for a commission of 7½ per cent. of the purchase price, or, in the event it advanced to the said Paterson & Edey Lumber Company $40 per thousand feet on said lumber, a commission of 12½ per cent. on the purchase price, of such of said lumber as to which such advance had been made, and that, during said period of time, Paterson & Edey Lumber Company must not sell any lumber nor offer same for sale to any other person.

"The defendant obligated itself to advance to the said Paterson & Edey Lumber Company every two weeks $40 per thousand feet on all hard wood lumber manufactured during the two previous weeks. The said Paterson & Edey Lumber Company obligated itself

in said oral contract to pile said lumber on good foundations, for air drying," etc. (detailing the manner of stacking). "All lumber manufactured by the said Paterson & Edey Lumber Company, when directed by the said Carolina Portland Cement Company, was to be loaded by the said Paterson & Edey Lumber Company f. o. b. cars Mobile, Ala., and shipped upon the orders and instructions of the said Carolina Portland Cement Company."

It is averred that the Paterson Company, relying upon the obligations of the defendant to sell said lumber in accordance with the terms of said oral agreement, did, subsequent to May 15, 1920, and prior to receiving definite advice that said written contract would not be approved by an executive officer of the Carolina Company; and during the time when said oral contract was in force and effect, manufacture a large amount of hard wood lumber, to wit, 600,000 feet, at great cost and expense, and did stack same in manner detailed, "in exact accordance with the terms of said contract"; that the Paterson Company was at all times ready, able, and willing to pay commissions in accordance with the terms of the contract, and to ship lumber and to perform all of its agreements under the contract; that the Paterson Company was prevented, by its obligations under said contract, from selling said lumber on open market at a profit; that except for such obligation it could have sold all of said lumber at an average price of $70 per thousand feet. It is further averred that, notwithstanding the Paterson Company was restrained by the oral contract from selling said lumber and that the defendant company bound itself by said oral contract to sell said lumber, defendant breached said oral contract in this, that it wholly declined to observe and carry out its obligations under said contract, and wholly failed or refused to sell said lumber, up to and including September 3, 1920, which, plaintiff avers, was a reasonable time within which to have sold all of said lumber, and on said last-named date notified the Paterson Company that it would not sell said lumber, and that defendant could by the exercise of due diligence have sold all of said lumber at an average price of $70 per thousand feet.

It is further averred that after said breach the Paterson Company after diligent effort was able to realize for said lumber only $8,-311.52, and that as a proximate consequence of the breach of said contract by defendant, the Paterson Company sustained a loss of $33,688.48, which sum with interest is sought to be recovered.

In conclusion the court alleges the transfer and assignment of the cause of action to J. E. Paterson.

Armbrecht & Hand, of Mobile, for appellant.

Where a cause of action growing out of a contract is brought after assignment of the cause of action to a third party, the suit should be brought by the party to the contract in the name and for the use and benefit of the assignee. Snead v. Bell, 142 Ala. 449, 38 So. 259; Spurgeon v. McCall, 204 Ala. 395, 85 So. 480. The written contract was not conditioned upon signature before 'it should become effective, but upon approval by an executive officer of the Carolina Company. Having been so approved, it was not necessary that it be signed. 13 C. J. 305; Whatley v. Reese, 128 Ala. 500, 29 So. 606; Forthman v. Deters, 206 Ill. 159, 69 N. E. 97, 99 Am. St. Rep. 145; Hardwood Pkg. Co. v. Courtney (C. C. A.) 253 F. 929; Galveston v. G., H. & S. A. R. Co. (D. C.) 284 F. 137; 1 Williston on Contr. 157. Where agency is alleged, a general allegation is sufficient. 2 C. J. 906; Morris v. Bynum Bros., 207 Ala. 541, 93 So. 467; L. & N. v. Bartee, 204 Ala. 539, 86 So. 394, 12 A. L. R. 251; Hanover Fire Ins. Co. v. Wood, 209 Ala. 380, 96 So. 250; W. U. T. Co. v. Garthright, 151 Ala. 413, 44 So. 212. Each count of the complaint is a separate and distinct cause of action. It is not necessary to the validity of a contract that its duration be fixed by date. 13 C. J. 569, 604; Alcazar v. Mudd, 204 Ala. 509, 86 So. 209. The contract sued upon is sufficiently definite. McIntyre L. & E. Co. v. Jackson Lbr. Co., 165 Ala. 268, 51 So. 767, 138 Am. St. Rep. 66; Lucas E. Moore Stave Co. v. Kennedy, 212 Ala. 193, 101 So. 894. Where there are several stipulations, one breach of each of several stipulations may be assigned in one count. Worthington v. Davis, 208 Ala. 600, 94 So. 806. A count is not demurrable for claiming unrecoverable damages. Columbia Motors Co. v. Williams, 209 Ala. 640, 96 So. 900; N. C. & St. L. v. Campbell, 212 Ala. 27, 101 So. 615; Lurie v. Kegan-Grace Co., 209 Ala. 339, 96 So. 344.

Garber & Garber and McClellan, Rice & Stone, all of Birmingham, for appellee.

Several breaches of a single stipulation in a contract cannot be joined in a single count. Worthington v. Davis, 208 Ala. 600, 94 So. 806. One dealing with an agent is bound to inquire into his authority. 2 Mechem, Agency, §§ 743, 750; 1 Clark & Skyles, 506. The complaint must aver and show authority of the agent to bind the principal, unless ratification is averred. Hanover Ins. Co. v. Wood, 209 Ala. 380, 96 So. 250; May v. Kelly, 27 Ala. 497; Cummins v. Beaumont, 68 Ala. 204; 2 C. J. 562. Where a third party dealing with an agent knows that the agent has authority to make written contracts subject to approval by the principal, such third party has notice that the agent has no authority to make a binding oral contract. Leavitt v. Dimmick, 86 Or. 278, 168 P. 292; Burks v. Hubbard, 69 Ala. 379; Wynn v. Hoffman, 203 Ala. 72, 82 So. 32; 2 C. J. 569.

Where a buyer is to take goods when completed by the seller, his obligation is qualified by the condition that notice is given him of the completion of the goods. 2 Williston on Contr. 1586, 1714, 1716; Chambers v. Lindsey, 171 Ala. 158, 55 So. 150; Phœnix Ins. Co. v. Doster, 106 U. S. 30, 1 S. Ct. 18, 27 L. Ed. 65. An unsigned contract cannot be enforced by either party, if it is shown that it could not be binding until signed by both of them. 13 C. J. 305; Hardwood P. Co. v. Courtney (C. C. A.) 253 F. 929; Ambler v. Whipple, 87 U. S. (20 Wall.) 546, 22 L. Ed. 403; Hennessy v. Bond (C. C. A.) 77 F. 403; Galveston v. G., H. & S. A. R. Co. (D. C.) 284 F. 137. An ordinary agent has no such general or apparent authority as will support a contract of unusual magnitude and warranties. Morris v. Bynum, 207 Ala. 541, 93 So. 467. Inconsistent and repugnant averments render a count bad on demurrer. Merrill v. Sheffield Co., 169 Ala. 242, 53 So. 219; Worthington v. Davis, supra. A party is bound by the allegations of his pleadings deliberately made, and should not be allowed to obtain benefits from contradictory and inconsistent allegations. Robinson v. Drummond, 24 Ala. 174; Losch v. Pickett, 36 Kan. 216, 12 P. 822; Coffin v. Board (C. C.) 114 F. 518; Conwill v. Eldridge, 71 Okl. 223, 177 P. 79; 18 Ency. Pl. & Pr., 738; Davis v. Wakelee, 156 U. S. 680, 15 S. Ct. 555, 39 L. Ed. 578; Savings & Tr. Co. v. Bear Valley Ir. Co. (C. C.) 112 F. 693.

GARDNER, J. [1] The suit is by appellant against the appellee seeking a recovery of damages for breach of contract. As last amended, the plaintiff stated his case in nine counts. Defendant's demurrer was sustained to each count, and on account of such adverse ruling on the pleadings, plaintiff took a nonsuit and prosecutes this appeal for a review thereof. J. E. Paterson is the assignee of this chose in action, the Paterson Lumber Company being the assignor, and the suit is properly brought in the name of the Paterson Lumber Company for the use and benefit of said assignee. Snead v. Bell, 142 Ala. 449, 38 So. 259; Spurgeon v. McCall, 204 Ala. 395, 85 So. 480.

The parties to the contract will, for convenience, be designated as the Paterson Company and the Carolina Company.

Counts AA, CC, DD, and EE rest for recovery upon breaches of a written contract made Exhibit A thereto. Negotiations with reference to this contract were carried on with one Brewer as representing the defendant company. These counts disclose that the written contract, Exhibit A, was agreed upon by the Paterson Company and said Brewer on May 15, 1920, subject to the approval of an executive officer of the Carolina Company. Two copies were duly signed by proper officers of the Paterson Company, and delivered to Brewer, duly authorized to receive them

for the Carolina Company, and two copies retained by the Paterson Company. It was agreed that the written contract should "become effective if and when it was approved by an executive officer of said Carolina Company." The counts then allege that the contract was approved by an executive officer of the Carolina Company on August 6, 1920. The contract was "not signed by the Carolina Company or any one purporting to act for it in the premises," and it is insisted that, prima facie at least, from a consideration of the written contract in connection with the averments of the pleader in reference thereto, approval by signature was the intention of the parties, and that if approval otherwise was to be considered of binding force and effect, these counts should have so averred in more specific terms.

[2] Appellant relies upon the well-recognized rule that the object of signature is to show mutuality and assent, which may be shown in other ways, and that unless a contract is required by statute or arbitrary rule to be in writing, it need not be signed, provided it is accepted and acted upon. 13 C. J. 305; Whatley v. Reese, 128 Ala. 500, 29 So. 606; Forthman v. Deters, 206 Ill. 159, 69 N. E. 97, 99 Am. St. Rep. 145; Hard Wood Package Co. v. Courtney (C. C. A.) 253 F. 929; 1 Williston on Contracts, p. 157.

"But it is equally well settled that an unsigned contract cannot be enforced by either of the parties, however completely it may express their mutual agreement, if it was also agreed that the contract should not be binding until signed by both of them." Hard Wood Package Co. v. Courtney, supra.

This latter authority contains also the following excerpt from the opinion in the case of Miss. SS. Co. v. Swift, 86 Me. 248, 29 A. 1063, 41 Am. St. Rep. 545, of interest in this connection:

"When parties enter into a general contract, and the understanding is that it is to be reduced to writing, or if it is already in a written form, that it is to be signed before it is to be acted on, or to take effect, it is not binding until it is so written or signed. * * * When correspondence indicates that a formal draft of a contract was in the minds of the parties, or at least in the mind of the party sought to be charged, as the only authoritative evidence of a contract, and that he did not have, nor signify, any intention to be bound until the written draft had been made and signed, he is not bound until such draft is duly made and signed. * * * The burden of proof is upon the party claiming the completion of the contract before the written draft thereof is signed."

Upon concluding a review of some of the leading authorities the Supreme Court of Maine in the Swift Case, supra, summed up the whole matter with the following observations:

"From these expressions of courts and jurists it is quite clear that after all the question

is mainly one of intention. If the party sought to be charged intended to close a contract prior to the formal signing of a written draft, or if he signified such an intention to the other party, he will be bound by the contract actually made, though the signing of the written draft be omitted. If, on the other hand, such party neither had nor signified such an intention to close the contract until it was fully expressed in a written instrument and attested by signatures, then he will not be bound until the signatures are affixed. * * * In determining which view is entertained in any particular case several circumstances may be helpful, as: Whether the contract is of. that class which are usually found to be in writing; whether it is of such nature as to need a formal writing for its full expression; whether it has few or many details; whether the amount involved is large or small; whether it is a common or unusual contract; whether the negotiations themselves indicate that a written draft is contemplated as a final conclusion of'the negotiations. If a written draft is proposed, suggested, or referred to, during the negotiations, it is some evidence that the parties intended it to be the final closing of the contract."

[3] It clearly appears from the averments of these counts and a consideration of the contract itself that it was one of great importance, containing many details and involving considerable sums of money, and as conclusive of all these matters was the act of the parties in having the agreement made by Paterson Company with the agent, Brewer, reduced to a formal and evidently skillfully prepared written contract, actually signed in duplicate by Paterson Company with blank space for the signature of the Carolina Company, and appropriate spaces for signatures of attesting witnesses for each of the contracting parties. The two copies signed by the Paterson Company were delivered to the agent for the Carolina Company.

We are of the opinion that the averments of these counts in connection with the contract suffice to raise the implication that the approval of the executive officer referred to therein was to be manifested in like manner as the Paterson Company, by signature to the instrument. Both reason and common sense so indicate, and, clearly, the contract and conduct of the parties is to be properly so construed as disclosing, prima facie at least, such an intention. To each of these counts (with the exception of DD where it is omitted), the telegram relied upon as evidencing the approval of the executive officers is· referred to and made an exhibit thereto; but we are unable to see that it adds any weight to plaintiff's case. Its language, "mailing signed contract to you today," is rather confirmatory of the view that approval by signature was the intention and understanding of the parties. No signed contract is alleged or exhibited. Upon the face of these counts, therefore, we think it appears sufficiently, by implication at least, that the approval of the

executive officer of the defendant company was to be manifested by signature to the contract.

[4, 5] These counts are to be construed most strongly against the plaintiff, and the burden was upon him to show a binding and enforceable contract. If, therefore, approval otherwise than by signature was agreed upon, or intended by the parties, the counts should have so averred. Failing therein, they were subject to the demurrer interposed, and the court committed no error in the ruling thereon.

[6] Counsel for appellee further insist that the averments of these several counts are inconsistent and repugnant, in that defendant is sought to be held liable for conduct and agreements of an agent, and in the same counts disclosing the agent's lack of authority to bind the principal without the express approval of an executive officer thereof. The conclusion reached as to the insufficiency of these counts upon the ground above stated renders a consideration of this further insistence unnecessary.

But the same argument is carried forward into a consideration of counts FF, GG, HH, II, and JJ, which rest for recovery upon breaches of an oral contract. These counts make no reference whatever to counts AA, CC, DD, and EE, above discussed, nor is there any reference to the contract in writing made Exhibit A thereto. Under our system of pleading the several counts of the complaint are considered separate and distinct, and to be tested for their sufficiency by the. averments thereof without reference to any other count, unless so adopted by the language thereof, which is often done in order to save repetition:

"The several counts of a declaration are regarded as its several parts, or sections; and it is not only permissible, but often very prop-er, to avoid unnecessary repetition and prolixity, that one should refer to another. If, however, there is not an express reference, the several counts are considered as distinct as if contained in separate declarations." Robinson v. Drummond, 24 Ala. 174.

[7] These counts are therefore to be considered upon their averments without reference to the others. The oral contract which forms the foundation of these counts is alleged (with the exception of HH, hereinafter referred to) to have been entered into on defendant's part by one Brewer as its duly authorized agent. Reference is made to a written contract, but the only purpose of such reference is to fix the time, duration of the oral contract, that is, the time intervening between that date (May 15, 1920), and the time when such written contract should be approved by an executive officer of defendant company, or plaintiff should be notified that it would not be approved. Reference to the written contract was therefore only for a col-

lateral purpose, and no necessity arose for a statement of its terms and conditions.

As previously noted, these counts expressly aver that Brewer, the agent, was duly authorized to act in the premises in behalf of his principal, and the averments of these counts in this respect clearly meet the requirements of our decisions. Morris v. Bynum, 207 Ala. 541, 93 So. 467; Hanover Fire Ins. Co. v. Wood, 209 Ala. 380, 96 So. 250; L. & N. R. R. Co. v. Bartee, 204 Ala. 539, 86 So. 394, 12 A. L. R. 251.

Nor do we intend to here indicate a view that, had express reference been made to Exhibit A of the other counts, appellee's point would have been well taken. The oral contract relied upon in these latter counts fixed the price of the sale of the lumber at $70 per thousand feet, while under the written contract the price was to be determined in a certain manner, and evidently dependent largely upon the market. The duration of the oral contract depended entirely upon the action of the defendant in reference to the written contract, and could, no doubt, if desired, have been terminated by such action in a few days. There are other differences which need not be further detailed. In any event, the authority of the agent is sufficiently averred, and the insistence to the contrary may be more appropriately addressed to the matter of proof rather than the sufficiency of the pleading.

[8-10] The oral contract set up in these counts is definite as to the time it became effective, May 15, 1920, the timber covered thereby, and the time of its duration as above outlined. Its salient terms are made sufficiently to appear, and the averments of these counts show a compliance by the Paterson Company of all precedent obligations or conditions, and that said company was ready, willing, and able to meet all subsequent obligations. The several breaches of the contract relied upon are clearly stated in each of these counts, nor do we find that the pleader has in any of them offended the rule against assigning two breaches in the same count on one and the same stipulation. It is of course permissible to assign one breach of each of several stipulations in one count. Worthington v. Davis, 208 Ala. 600, 94 So. 806. The damages claimed are definitely stated, and are neither remote, uncertain nor speculative, but the averments show that they are such as naturally and proximately flow from the breaches of the contract relied upon for recovery.

The questions herein discussed appear to be the ones upon which stress is laid in argument, and to give to each count detailed treatment in connection with the numerous assignments of demurrer interposed thereto would unnecessarily extend this opinion to undue length. We think a careful reading and consideration of these counts resting upon breach of the oral contract will suffice to show they are not subject to demurrer.

[11] As we gather from briefs of counsel, the trial court evidently ruled against these counts upon the theory of repugnancy heretofore discussed, but in that view we cannot concur. Count HH avers that the oral contract was entered into between plaintiff and defendant company, and makes no mention of an agent, and the point is taken that the count is defective in failing to state what authorized agent of defendant made the contract. The averment of the complaint in this respect is in accord with the generally accepted rule (2 C. J. 904), and we find nothing to the contrary in Hanover Fire Ins. Co. v. Wood, 209 Ala. 380, 96 So. 250; May v. Kelly, 27 Ala. 497; South. States F. & C. Co. v. Lunsford, 192 Ala 76, 68 So. 273, cited by counsel for appellee.

For the error of the court in sustaining the demurrer to counts FF, GG, HH, II, and JJ, the judgment must be reversed and the cause remanded.

Reversed and remanded.

ANDERSON, C. J., and SAYRE and BOULDIN, JJ., concur.