JOHN E. BYRNE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 603–64. Filed November 5, 1965.

*William N. Brady*, for the petitioner.
*James E. Caldwell*, for the respondent.

### OPINION

DRENNEN, *Judge:* Respondent determined deficiencies in petitioner's income tax for the years 1959 and 1960 in the respective amounts of $557.58 and $3,807.63.

There are two issues for decision:

(1) Whether petitioner is entitled to deduct in the taxable years 1959 and 1960, net operating losses of J. J. Glenn & Co. (hereafter

referred to as Glenn Co.), a corporation which elected as a small business corporation, pursuant to the provisions of section 1372,[1] not to be subject to income tax.

(2) The amount of the net long-term capital gain of Glenn Co. includable in petitioner's income for 1959.

The case was submitted under Rule 30(a), Tax Court Rules of Practice, on a stipulation of facts with exhibits attached.

Petitioner and his wife, Carrie M. Byrne, now deceased,[2] resided in Chicago, Ill., during the taxable years 1959 and 1960. They filed joint Federal income tax returns for the taxable years 1959 and 1960 with the district director of internal revenue, Chicago, Ill.[3]

In 1940, petitioner and his wife purchased the outstanding stock of Glenn Co. for $13,000. Glenn Co. was incorporated in 1929 under the laws of Illinois. Its principal business activity is selling electrical insulation material. It also installs and maintains electrical machinery. During the years in controversy, petitioner owned 800 of the 1,600 shares of Glenn Co.; his wife owned 799; and his nominee owned 1. Petitioner now owns 1,599 of the 1,600 shares of Glenn Co., and the other 1 share is owned by his nominee.

On December 1, 1958, Glenn Co. elected, as a small business corporation under the provisions of section 1372, not to be subject to Federal income tax. Its shareholders consented to the election.

Glenn Co. filed corporate returns of income (Treasury Department Form 1120–S) for the calendar years 1958, 1959, and 1960 with the district director of internal revenue, Chicago, Ill.

For the calendar year 1958, Glenn Co. reported a net loss in the amount of $22,077.41, after taking into account compensation paid petitioner as an officer in the amount of $42,000.[4] Petitioner, on his Federal income tax return for the taxable year 1958, deducted this loss in the amount of $22,077.41. He included in income reported the compensation received from Glenn Co. in the amount of $42,000.

For the calendar year 1959, Glenn Co. reported taxable income in the amount of $6,713.66, after taking into income net long-term capital gain in the amount of $8,573.20 and deducting compensation paid petitioner in the amount of $42,000.

On his individual return for 1959, petitioner reported compensation received from Glenn Co. in the amount of $42,000, with respect to

---

[1] All statutory references, unless otherwise noted, are to the Internal Revenue Code of 1954.

[2] The statutory notice herein was joint and was issued to petitioner and Carrie M. Byrne under date of Nov. 18, 1963. Carrie M. Byrne died Sept. 14, 1963. Only petitioner filed a timely petition.

[3] The joint returns will be referred to herein as petitioner's returns, and the income and deductions reported thereon as petitioner's income and deductions.

[4] The amount of compensation was reported in one part of the return to be $45,000 but this was in error.

which tax in the amount of $13,600 had been withheld. He also reported, as his share of the net long-term capital gain of Glenn Co., the amount of $8,567.83.[5] He reported that Glenn Co. had incurred a net operating loss in 1959 in the amount of $1,859.54 (which was the net income reported less the net long-term capital gain) of which his share was $1,858.38. He claimed a deduction for the latter amount.

For the taxable year 1960, Glenn Co. reported a net loss in the amount of $15,445.25, after deducting compensation paid petitioner in the amount of $42,000. On his individual return for 1960, petitioner reported as income the compensation received from Glenn Co. in the amount of $42,000, with respect to which tax in the amount of $13,600 had been withheld. He claimed a deduction for his share of the net loss of Glenn Co. in the amount of $15,435.60.

Glenn Co. included balance sheets as of the end of its taxable years on its corporate returns. These balance sheets show the following net worth as of the dates indicated:

|  | Dec. 31— | | |
| --- | --- | --- | --- |
|  | 1958 | 1959 | 1960 |
| Capital stock | $16,000.00 | $16,000.00 | $16,000.00 |
| Paid-in surplus | 11,100.00 | 11,100.00 | 11,100.00 |
| Earned surplus | 102,586.82 | 109,300.48 | 92,912.48 |
| Net worth | 129,686.82 | 136,400.48 | 120,012.48 |

In determining the deficiency for 1959, respondent disallowed as a deduction to petitioner for the taxable year 1959 the net loss of Glenn Co. which had been claimed by petitioner on his individual return for this taxable year. Respondent also determined that the net long-term capital gain of Glenn Co., properly to be reported by petitioner, was in the amount of $6,709.45, rather than $8,567.83 which petitioner had reported. Respondent reduced petitioner's taxable income by 50 percent of the difference between the two amounts, or $929.19.[6]

Respondent determined that, for the taxable year 1960, petitioner was entitled to deduct no more than the amount of $6,709.45 of the net operating loss of Glenn Co. reported for the taxable year 1960.

The two issues before us, (1) whether petitioner may deduct, for the years 1959 and 1960, any portion of the net operating losses incurred in those taxable years by Glenn Co., an "electing small business corporation" under subchapter S of the 1954 Code, and (2) the amount of long-term capital gain of Glenn Co. includable in petitioner's in-

---

[5] The amount of $8,567.83 was reported as 1599/1600 of the reported long-term capital gain of Glenn Co. Apparently, petitioner's nominee, who was record owner of one share, reported the remainder. In computing taxable income, petitioner took one-half of the reported gain, or $4,283.92, into account, according to the stipulation of facts. Actually, petitioner used the alternative tax.

[6] Respondent, in determining the deficiency for 1959, employed the alternative tax.

come for 1959, are somewhat interrelated and we will discuss them together. The year 1958 is not before us, but the net operating loss incurred by Glenn Co. in that taxable year has a bearing on the issues with respect to 1959 and 1960.

Section 1374 of the Code provides, insofar as pertinent here, that a net operating loss of an electing small business corporation for any taxable year shall be allowed as a deduction from the gross income of its shareholders to the extent of their prorata share thereof, but limited to the shareholder's adjusted basis in his stock of the corporation determined as of the close of the taxable year of the corporation.

Section 1376 of the Code provides, insofar as pertinent here, that the basis of a shareholder's stock in an electing small business corporation shall be increased by the amount required to be included in the gross income of such shareholder under section 1373(b), being his prorata share of the undistributed taxable income of the corporation for the corporation's taxable year, to the extent such amount is actually included in the shareholder's gross income in his returns, and shall be reduced by an amount equal to the amount of his portion of the corporation's net operating loss for any taxable year attributable to such stock.

Section 1373 requires that a shareholder's prorata share of the undistributed taxable income of the electing corporation for its taxable year shall be included in the gross income of the shareholder for his taxable year within which the taxable year of the corporation ends. "Undistributed taxable income" is defined as taxable income minus the amount of money distributed as dividends during the taxable year, to the extent such amount is a distribution out of earnings and profits of the taxable year as specified in section 316 (a)(2). Section 1373(d) provides that, for purposes of this subchapter, taxable income of an electing small business corporation shall be determined without regard to the deduction allowed by section 172 (relating to net operating loss deduction) and certain other deductions not relevant here. Section 1.1373–1(c), Income Tax Regs., provides that the taxable income of an electing small business corporation is computed in the same manner as it would be computed if no election had been made, with the exceptions noted above contained in section 1373(d), and we find nothing in the subchapter S law to indicate that it should be computed otherwise.

Glenn Co. elected to be treated as a nontaxable small business corporation in 1958. It incurred an operating loss for its calendar year 1958 in the amount of $22,077.41, all of which petitioner deducted in computing his taxable income for the year 1958. So far as can be determined from the record in this case, petitioner paid $13,000 for his stock in the corporation, and, absent any evidence requiring any adjustments thereto, his adjusted basis in the stock as of December 31,

1958, was his cost, or $13,000. See secs. 1011 and 1012. Assuming that the net operating loss reported by Glenn Co. for 1958 was correct, petitioner would have been entitled to deduct his prorata share of this loss (1599/1600 thereof), but only to the extent of $13,000, his basis in his stock. Sec. 1374(c)(2). However, petitioner's tax liability for the year 1958 is not before us. Nevertheless, under section 1376(b)(1), petitioner's basis in his stock of Glenn Co. was reduced by the amount of the net operating loss of the corporation attributable to petitioner's stock, but not below zero, so his basis would have been zero as of the beginning and end of the year 1959. There was no undistributed taxable income of the corporation, nor any other reasons of which we are aware, that would require an upward adjustment of petitioner's basis in his stock during this period.

Petitioner's first year before us is 1959. For the year 1959 Glenn Co. reported taxable income of $6,713.66 after taking into income net long-term capital gain of $8,573.20, without which it would have reported a net operating loss of $1,859.54.

Section 1375 of the Code, insofar as pertinent here, provides that the amount includable in the gross income of a shareholder as dividends from an electing small business corporation shall be treated as long-term capital gain to the extent of the shareholder's prorata share of the excess of the corporation's net long-term capital gain over its net short-term capital loss for such taxable year, but limited to the corporation's taxable income, as computed under section 1373(d), for the year.

Under the above-outlined provisions of the law petitioner was required to include in his gross income for 1959 his share of the taxable income of the corporation for 1959, or $6,709.45, even though this amount was not distributed to him. Sec. 1373. However, inasmuch as petitioner's share of the long-term capital gain of the corporation exceeded his share of the taxable income of the corporation, all of the undistributed taxable income of the corporation that he was required to include in his gross income for 1959 is to be treated as long-term capital gain. Sec. 1375(a). But the amount includable in petitioner's income as long-term capital gain is limited to the corporation's taxable income for the year, or $6,709.45. See S. Rept. No. 1983, 85th Cong., 2d Sess., p. 221, on Technical Amendments Act of 1958. Petitioner included 50 percent of the entire amount of the corporation's capital gain on his return, but respondent, in his determination, properly reduced the amount to 50 percent of $6,709.45.

Petitioner also deducted on his return for 1959 his prorata share of the corporation's net operating loss for 1959, computed without including the long-term capital gain, or $1,858.38. Respondent disallowed this deduction, and properly so, because as previously mentioned petitioner's basis in his stock of the corporation was zero as of

December 31, 1959, and the deduction he is entitled to for his share of the corporation's net operating loss is limited to his basis in his stock of the corporation. Sec. 1374(c) (2).

For its taxable year 1960, Glenn Co. reported a net operating loss of $15,445.25, and petitioner deducted his prorata share thereof, or $15,435.60, on his individual return. In his determination respondent disallowed all of the deduction claimed in excess of $6,709.45. We think respondent's determination was correct under the above provisions of the law, because here again petitioner's deduction is limited under section 1374(c) (2) to his basis in his stock of the corporation. As of the end of 1959 petitioner's basis in his stock was zero. But for the year 1959 petitioner was required to include in his gross income his prorata share of the undistributed taxable income of the corporation for 1959, or $6,709.45, which he did. Under section 1376(a) petitioner's basis in his stock of the corporation was increased by the amount of the corporation's undistributed taxable income which he was required to include in his income under section 1373(b), so his basis in his stock as of December 31, 1960, was $6,709.45. We find nothing in the law which would limit this increase in basis to 50 percent of $6,709.45 simply because petitioner was entitled to treat that amount as long-term capital gain, thus including only 50 percent thereof in his income, nor does respondent so contend. Consequently, petitioner was entitled to a deduction in 1960 of only $6,709.45 for the net operating loss of Glenn Co. for that year.

Respondent's determination of petitioner's tax liabilities for the years 1959 and 1960, with respect to the issues before us, was in accord with our conclusion set out above, and is sustained.

Petitioner contends that an electing small business corporation and its shareholders should be taxed in the same manner a sole proprietorship or a partnership would be taxed, and, consequently, that the salary he drew from the corporation, in the amount of $42,000 per year, should be ignored in computing his taxable income and that of the corporation. In other words, he says that as a partner or sole proprietor he would be taxed only on his share of the taxable income of the business without consideration of the salary he drew. However, he cites no authority for this contention except provisions of the partnership tax law, which we do not find to be applicable here. While it may be true that the concept behind subchapter S of the Code was to tax electing small business corporations and their shareholders in somewhat the same manner as partnerships and partners, we find nothing in either the law or its legislative history that would justify looking beyond the framework of subchapter S in determining the tax liability of shareholders of such a corporation with respect to their share of the corporation's income. See *Hauptman* v. *Director of In-*

*ternal Revenue*, 309 F. 2d 62. The basic purpose of subchapter S appears to have been to permit a qualified corporation and its shareholders to avoid the double tax normally paid when a corporation distributes its earnings and profits as dividends. But this was to be accomplished in a specified manner which, so far as we can determine, did not involve ignoring the corporate entity.

As we understand the law as written, and its objective, the corporate entity is retained and its taxable income is computed in the same manner as any other corporation except with respect to the net operating loss deduction and certain other specified deductions not here relevant. This would certainly include the allowance of a deduction to the corporation for reasonable compensation paid to officers for services rendered, sec. 162(a)—and petitioner does not claim that the compensation he was paid was not reasonable. While there are some differences in the computation of taxable income of an electing small business corporation and other corporations, the only differences are those specified in the law. With specific reference to the pass through of the corporation's net operating losses to the shareholders, section 1374(c)(1) provides that the stockholder's share of the corporation's net operating loss shall be his prorata share of the corporation's net operating loss, *computed as provided in section 172(c)*, except for certain deductions not relevant here.

Of course, there are differences in the taxation of the shareholders of electing small business corporations, the principal ones being that the shareholders are taxed on their share of the corporation's taxable income, whether it is distributed or not, and that the shareholders may claim their share of the corporation's net operating losses, and treat as long-term capital gain their share of the corporation's net long-term capital gain, both within limits provided in the law. With respect to the amount of the corporation's undistributed taxable income which the shareholders are required to include in their income, provision is made for recovering such amounts tax free if distributed in a subsequent year. See sec. 1375(d). However, this must all be done within the framework of the law as written, and petitioner's arguments would require us to look beyond that framework.

One difficulty with petitioner's position, in addition to being unsupported by the law, is that petitioner actually withdrew from Glenn Co. during the years 1958, 1959, and 1960, considerably more than the corporation's taxable income, and so far as we know, its earnings and profits, during that period. There is no claim that he borrowed the excess from the corporation. There was no undistributed taxable income of the corporation, subsequent to the date of its election, from which this excess could have drawn, except the small amount in 1959

mentioned above. The excess must have come from accumulated earnings and profits which petitioner had never included in his income. Hence, even if petitioner was correct in disregarding his salary in computing the corporation's taxable income, he would be required to include in his income the entire $42,000 he withdrew from the corporation, in part as a dividend from current year's earnings and in part as a dividend from accumulated earnings and profits on which tax at the shareholder level had not been paid, and there would be no net operating loss of the corporation for him to deduct. We doubt that petitioner would fare much better taxwise if his arguments were carried through to their logical conclusions, than he is faring under respondent's determination. In fact respondent has reduced the amount of capital gain petitioner is required to include in his income for 1959.

Petitioner also claims that the adjusted basis in his stock should be increased to reflect the net worth of the corporation at the time the corporation made its election under subchapter S. He cites no authority for this position and we know of none. Petitioner argues that ignoring the additions to his original investment in the corporation in 1940 or 1941 made by the earnings of the corporation from that time to 1958 is not justified. There is no evidence that petitioner made any contribution to the capital of the corporation subsequent to the date he bought the stock, absent which it is clear that petitioner has never paid tax on the increment in value of the corporate stock resulting, we assume, from its undistributed earnings and profits. We cannot agree with petitioner's argument on this point.

*Decision will be entered for the respondent.*