DONALD M. PERRY AND FREDA M. PERRY, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

H. E. PERRY AND ANNIE MAE PERRY, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 6401–66, 6402–66. Filed February 20, 1968.

*J. Gilmer Blackburn*, for the petitioners.
*Robert D. Hoffman*, for the respondent.

509

514

OPINION

*Issue 1. Incorporation and Transfer of the Partnership Business to the Corporation*

The first issue is whether the corporation was properly formed and whether the business of the partnership was effectively transferred to it. Petitioners argue the negative and reason that the losses were actually sustained by the partnership, the same organization in which the partners had successfully done business for the past several years. However, respondent argues that all the requirements have been met for special treatment under sections 1371–1378 (subchap. S) and therefore petitioners should be allowed only to deduct their prorata

share of the net operating losses as limited by section 1374(c)(2).[2]

In support of the contention that the corporation was not properly organized, petitioners rely upon the following facts to show that the petitioners never really intended to incorporate the partnership: The stockholders held only one meeting during the years presently before us and failed to elect any directors although directors had been previously chosen in the declaration of incorporation. The partnership never informed its creditors that there was a change to corporate form. The corporation changed neither the names on the business signs nor its method of operation in any material respect from those of the partnership. However, we cannot agree that Perry and Donald's intention was not to incorporate, and we conclude that the corporation did come into being especially in light of other acts hereafter set forth.

Petitioners have stipulated that in an effort to limit their personal liability, the partners (Perry and Donald) consulted an attorney who advised them to incorporate the business. We believe that the partners' firm intention was to follow the advice of their attorney, whatever that might entail.

Perry, Donald, and Annie Mae *executed* and *properly filed* all the papers necessary to incorporate the business. Also, a final income tax return for the partnership was signed and filed for the short period January 1 to June 30, 1962, as were corporate tax returns for the corporation.

In addition, the proper elections were filed under section 1372 in order that the income from the business would not be taxed as a corporation. Petitioners must have considered that the partnership had been incorporated for Federal income tax purposes. Moreover, shortly thereafter, Perry and the Corps of Engineers executed an agreement to transfer contract No. 5328 from the partnership to the corporation. This modification agreement specifically stated:

"Perry Electric Company, Inc., a corporation duly organized and existing under the laws of the State of Alabama." Accordingly, we find

---

[2] SEC. 1374. CORPORATION NET OPERATING LOSS ALLOWED TO SHAREHOLDERS.
(c) DETERMINATION OF SHAREHOLDER'S PORTION.—

\* \* \* \* \* \* \*

(2) LIMITATION.—A shareholder's portion of the net operating loss of an electing small business corporation for any taxable year shall not exceed the sum of—
(A) the adjusted basis (determined without regard to any adjustment under section 1376 for the taxable year) of the shareholder's stock in the electing small business corporation, determined as of the close of the taxable year of the corporation (or, in respect of stock sold or otherwise disposed of during such taxable year, as of the day before the day of such sale or other disposition), and
(B) the adjusted basis (determined without regard to any adjustment under section 1376 for the taxable year) of any indebtedness of the corporation to the shareholder, determined as of the close of the taxable year of the corporation (or, if the shareholder is not a shareholder as of the close of such taxable year, as of the close of the last day in such taxable year on which the shareholder was a shareholder in the corporation).

that the facts show that Perry and Donald did intend to and did incorporate the partnership.

Furthermore, under Alabama statutory law, title 10, section 21(11) provides:

When a body corporate.—When the certificate of incorporation has been made and filed for record as provided, the incorporators, their successors and assigns, shall constitute a body corporate under the name set forth in the certificate of incorporation, but subject to dissolution as provided for in this chapter.

This was done.

As the above facts show that all the appropriate papers were filed, we conclude that the above statute was followed and that Perry Electric Co., Inc., was a corporation properly incorporated under the laws of the State of Alabama.

In the alternative, petitioners argue that even if the corporation were properly formed, the partnership never intended to transfer the assets, liabilities, and operations to the corporation and accordingly the assets were still the partnership's and not the corporation's; accordingly, the contract was performed and the net operating loss was sustained by the partnership and not the corporation. Petitioners base this argument on the contention that there was no contract transferring the business as the written agreement had been signed only by Donald and Annie Mae, but not by Perry in his capacity as either a partner or as president of the corporation.

On brief, even petitioners concede that:

[a] signature is not always essential to the binding force of an agreement, and whether a writing constitutes a binding contract even though it is not signed or whether the signing of the instrument is a condition precedent to its becoming a binding contract usually depends on the intention of the parties. [Citing 17 C.J.S., sec. 62 (pp. 731, 732).]

In addition, Alabama follows the rule that "The object of a signature is to show mutuality or assent, but these facts may be shown in other ways, as, for example, by the acts or conduct of the parties." 17 C.J.S., sec. 62. See *Whatley* v. *Reese*, 128 Ala. 500, 29 So. 606 (1900); and *Paterson & Edey Lbr. Co.* v. *Carolina-Portland Cement Co.*, 215 Ala. 621, 112 So. 245 (1927). The issue is a question of fact as to whether Perry's conduct indicates his assent to the contract even though the writing was not signed by him.

We believe that Perry's acts subsequent to June 22, 1962, clearly indicate that he and Donald intended that the "instrument was a binding contract even though it was not signed" by Perry and that his conduct evidenced his assent to the agreement.

The facts show that the parties acted as if the contract were sufficient. The corporation filed tax returns that reflected the operations

of the business and these tax returns were signed by Perry. Moreover, Perry signed, as partner and as president of the corporation, a modification agreement with the Corps of Engineers which made specific reference to the fact that on June 22, 1962, the partnership "assigned, conveyed, and transferred to the Transferee [corporation]" and "the Transferee [corporation], by virtue of said assignment, conveyance and transfer, has acquired" *all* assets, liabilities, and operations of the partnership. We conclude that Perry did in fact assent to the contract and that this contract was legally sufficient to transfer the assets to the corporation.

### *Issue 2. Basis in Stock and Corporate Indebtedness*

Petitioners' next argument is that even if the corporation were properly organized and the assets, liabilities, and operations were transferred to the corporation, the petitioners should be allowed to deduct their prorata share of net operating losses sustained up to their basis in the stock of the corporation plus their basis in any corporate indebtedness owed to them, because the corporation properly elected to be taxed under subchapter S of the Internal Revenue Code of 1954. We find no fault with this theory as it is supported by sections 1374(b)[3] and 1374(c)(2). See also *Richard Lee Plowden*, 48 T.C. 666 (1967).

Accordingly, since the parties are unable to agree on the proper figure, we must determine the total amount of their basis in the stock of the corporation on December 31, 1962, the date fixed by section 1374(c)(2). Petitioners argue for a figure of $52,430.51, the total of $29,481.20 (the amount in the capital account of the partnership at the date of incorporation)[4] plus $22,949.31, the costs of improvements made to land which had been erroneously charged to the purchases account. We agree with petitioners that these figures should be taken into consideration, since we have concluded that *all* assets and liabilities of the partnership were transferred to the corporation by the June 22, 1962, agreement. However, we believe petitioners' reasoning does

---

[3] SEC. 1374(b). ALLOWANCE OF DEDUCTION.—Each person who is a shareholder of an electing small business corporation at any time during a taxable year of the corporation in which it has a net operating loss shall be allowed as a deduction from gross income, for his taxable year in which or with which the taxable year of the corporation ends (or for the final taxable year of a shareholder who dies before the end of the corporation's taxable year), an amount equal to his portion of the corporation's net operating loss (as determined under subsection (c)).

[4] It should be noted that the use of the capital account is proper to determine petitioners' basis in their stock, as this is only a shortcut method of expressing the fact that under sec. 358 the basis of stock of distributee is his basis in the assets transferred minus the liabilities assumed by the corporation. We believe for purposes of this opinion the capital account represented this.

not go far enough. It fails to recognize events subsequent to the transfer of assets, but prior to December 31, 1962.

On September 26, 1962, the corporation transferred land to Perry and Annie Mae, which had a total basis of $47,544.67.

However, at the date of transfer, Perry and Annie Mae only had a total adjusted basis in their stock of $39,322.88.[5] Since the corporation did not have any current or accumulated earnings and profits on December 31, 1962, we find that Perry and Annie Mae realized a return of capital in the amount of their total adjusted basis in the stock under section 301(c).[6] The parties have stipulated and we find that the fair market value of this property was the same as its adjusted basis on the date the property was distributed to Perry and Annie Mae.

Donald's adjusted basis in the stock of the corporation on December 31, 1962, the close of the taxable year of the corporation, was $13,107.63 [7] while Perry and Annie Mae each had an adjusted basis of zero [8] at this date. Under section 1374(c)(2), petitioners are limited by these amounts in determining their prorata share of the net operating loss of the corporation for the taxable year ending December 31, 1962. *Richard Lee Plowden, supra.* The facts are clear that Donald's prorata share of the loss exceeded his adjusted basis and he will be able to deduct the full amount of his basis in the stock under section 1374(c). However, his basis in the stock will be reduced by this amount as required under section 1376(b)(1).[9]

With respect to the taxable year ended December 31, 1963, the corporation sustained a net operating loss of $16,900.18. Again, section 1374(c)(2) limits petitioners' deductions for their prorata share of

---

[5] The proportion of the partnership owned by Perry was 75 percent, therefore, the basis in the stock attributable to this partnership interest was equal to 75 percent of $52,430.51 or $39,322.88. The above facts show that upon incorporation Perry only obtained 38 percent of the stock of the corporation while Annie Mae acquired 37 percent of the stock in some undisclosed manner. For purposes of this opinion, we shall consider Perry to have made a gift of this stock to Annie Mae, and that her basis in this stock was the same as her donor's.

[6] SEC. 301. DISTRIBUTIONS OF PROPERTY.

(c) AMOUNT TAXABLE.—In the case of a distribution to which subsection (a) applies—

(1) AMOUNT CONSTITUTING DIVIDEND.—That portion of the distribution which is a dividend (as defined in section 316) shall be included in gross income.

(2) AMOUNT APPLIED AGAINST BASIS.—That portion of the distribution which is not a dividend shall be applied against and reduce the adjusted basis of the stock.

[7] The proportion of the partnership owned by Donald was 25 percent, therefore his basis in the stock was equal to 25 percent of $52,430.51 or .$13,107.63.

[8] Their bases were reduced because of the distribution of real estate to them handled under sec. 301(c)(2).

[9] SEC. 1376. ADJUSTMENT TO BASIS OF STOCK OF, AND INDEBTEDNESS OWING SHAREHOLDERS.

(b) REDUCTION IN BASIS OF STOCK AND INDEBTEDNESS FOR SHAREHOLDER'S PORTION OF CORPORATION NET OPERATING LOSS.—

(1) REDUCTION IN BASIS OF STOCK.—The basis of a shareholder's stock in an electing small business corporation shall be reduced (but not below zero) by an amount equal to the amount of his portion of the corporation's net operating loss for any taxable year attributable to such stock (as determined under section 1374(c)).

the operating loss to an amount equal to petitioners' adjusted basis in all their stock and in any corporate indebtedness owed to them. *Byrne* v. *Commissioner*, 361 F. 2d 939, 942, affirming 45 T.C. 151. As explained above, petitioners' adjusted basis in their stock was zero at the beginning of the taxable year 1963. Furthermore, there is no evidence of anything which occurred in 1963 that would have increased Donald's adjusted basis, nor is there any evidence that he had an adjusted basis in any liability which might be owed to him from the corporation. Therefore, we hold that Donald cannot deduct his prorata share of the corporation's net loss sustained in 1963. See *Richard Lee Plowden, supra.*

However, with respect to Perry and Annie Mae, the facts show that on December 31, 1963, their adjusted basis in corporate indebtedness to them was $10,184.49. Pursuant to section 1374(c)(2), Perry and Annie Mae may deduct their prorata share of the net operating loss sustained by the corporation but only to the extent of this amount.

## Issue 3. Bad Debt

The remaining issue is whether Perry and Annie Mae can deduct as a bad debt, under section 166,[10] the amount of a note executed by them in 1963, but not paid until 1964, a year which is not before us. The note was given to the bonding company in settlement of the obligation owed by the corporation on which Perry and Annie Mae were secondarily liable.

Petitioners' argument is that under section 166, Perry and Annie Mae should be allowed to deduct in 1963 all or a portion of the note. They apparently contend that this is an allowable bad debt deduction because the note given was secured by their real property and there was no prospect of recovering any amount from the corporation. The $138,000 note was signed by them in fulfillment of Perry's obligation to indemnify the bonding company for any loss to it which was caused by the partnership (and later by the corporation) under contract No. 5328.

The rule is well established that when a cash basis taxpayer gives a note to satisfy an obligation, a deductible expense does not arise under the income tax laws until the note is paid. *Helvering* v. *Price*, 309 U.S. 409; *Eckert* v. *Burnet*, 283 U.S. 140, 141; *Baltimore Dairy Lunch* v. *United States*, 231 F. 2d 870, 875. Furthermore, the rule has been applied to section 166, bad debt deductions. The courts have not

---

[10] SEC. 166. BAD DEBTS.

  (a) GENERAL RULE.—

    (1) WHOLLY WORTHLESS DEBTS.—There shall be allowed as a deduction any debt which becomes worthless within the taxable year.

allowed a cash basis taxpayer a deduction for the amount of an unpaid note given to a creditor to evidence taxpayer's intention to fulfill his obligation as guarantor for a third party. This is true even though the note is secured by the taxpayer's property and there is no prospect of the taxpayer-guarantor recovering from the primary obligor. *Frank Kuhn*, 34 B.T.A. 274; *Elmer A. Clark*, 14 B.T.A. 65; *Eckert* v. *Burnet*, *supra*.

As the parties have stipulated that no payments [11] were made on this note until January 1964, we cannot agree that Perry and Annie Mae should be allowed to deduct the amount of the note as a bad debt in the taxable year 1963.

*Decisions will be entered under Rule 50.*

---

[11] Although there is no evidence to establish whether Perry and Annie Mae operated on the cash receipts and disbursements basis or on the accrual basis, we assume that Perry and Annie Mae were cash basis taxpayers. See *Stanley C. Warrick*, 20 B.T.A. 220.