Warren G. Reed and Dorothy Reed v. Commissioner.
Reed v. Commissioner
Docket No. 3210-70 SC.
United States Tax Court
T.C. Memo 1971-77; 1971 Tax Ct. Memo LEXIS 255; 30 T.C.M. (CCH) 321; T.C.M. (RIA) 71077; April 20, 1971, Filed *255 Petitioners satisfied their obligation as guarantors on a note payable to a bank by Larson by transferring or adding their share of the obligation to their personal real estate account at the bank. Held Petitioners may not deduct as a debt due them by Larson which became worthless in 1966 the amount transferred to their real estate account in 1966. Donald M. Perry, 49 T.C. 508, 521-522. 322 Warren G. Reed, pro se, 204 W. Pike St., Morrow, Ohio, Donald W. Mosser, for the respondent. DRENNEN
Memorandum Findings of Fact and Opinion DRENNEN, Judge: Respondent determined a deficiency of $380.13 in the income tax of petitioners for their taxable year 1966. *256 The only issue presented is whether petitioners sustained a bad debt loss of $2,271.53 in 1966 under section 166, I.R.C. 1954. [1]
Findings of Fact Some of the facts have been stipulated and are so found. Petitioners are husband and wife and resided in Morrow, Ohio, at the time they filed their petition herein. They filed their joint Federal income tax return for the taxable year 1966 on the cash basis with the district director of internal revenue, Cincinnati, Ohio. In 1960 petitioner Warren G. Reed (hereinafter referred to as petitioner) and his partner, Albert Braverman, constructed a building on leased land located on the CCC Highway in Morrow, Ohio. The building was constructed for the operation of an A & W Drive-in Restaurant. The first National Bank of Morrow, Ohio (hereinafter referred to as the bank), held a mortgage on the building and equipment of the A & W Drive-in Restaurant, which was personally guaranteed by Albert Braverman, Myrtha Sue Braverman, and petitioners. On May 28, 1962, petitioner and Albert Braverman sold the A & W Drive-in Restaurant (building and equipment) to George B. *257 Larson (hereinafter referred to as Larson) under a conditional sales contract. The contract stated, in pertinent part, as follows: CONDITIONAL SALES CONTRACT May 28, 1962 Conditional Sellers: Albert Braverman, Pamela Drive, Morrow, Ohio. Warren Reed, R.R. 2, Morrow, Ohio. Conditional Purchaser: George B. Larson, Kenn Rd., Cincinnati 40, Ohio. * * * Purchase Price: Eleven Thousand and no/100 Dollars ($11,000.00) Terms of Payment: The purchaser agrees to pay seller in consideration for the above listed chattles [sic] the sum of $11,000.00 as follows: Five Thousand Dollars ($5,000.00) cash, the receipt whereof is hereby acknowledged, and the balance of Six Thousand Dollars ($6,000.00) with interest at six percentum (6%) per annum, computed annually, in monthly installments of Sixty Five Dollars ($65.00) a month or more beginning June 18, 1962, with each succeeding monthly payment due and payable on or before the 18th day of each month, provided, however, that the total unpaid balance of principal and interest shall become due and payable two years from date of this instrument. In the event that Purchaser fails to pay the purchase price with interest on or before two years *258 from date of this instrument, then the purchaser agrees from that time forward to pay eight per cent (8%) per annum as interest on the unpaid balance. The acceptance of monthly installments by sellers after two years from date of this instrument is not to be considered a waiver of sellers' rights to demand payment in full under the contract as specified above. Purchaser may, at his option, make payment of the aforementioned monthly payments at the home of Albert Braverman or to the First National Bank of Morrow, Ohio, to be credited against notes held by said bank which notes are described as follows: Note # 1 dated 6-24-61 Face Amount $3,471.78 at 6% Interest Bearing the signatures of Albert Braverman, Warren Reed, Dorothy Reed and Myrtha Sue Braverman. Note # 2 Dated 5-18-62 Face Amount $2,730.40 at 6% Interest. Bearing the signatures of Albert Braverman, Warren Reed, Dorothy Reed and Myrtha Sue Braverman. Larson made some payments to the bank pursuant to the conditional sales contract but made no payments after August 1964. In 1965 the bank determined that inasmuch as Larson had not made any payments for quite some time, Albert Braverman, Myrtha Sue Braverman, and petitioners *259 should be liable for the balance on the two notes they had personally guaranteed. The balance due on the two notes at that time totaled $4,454. 323 Sometime in 1965 after Larson had vacated the building of the A & W Drive-in Restaurant, petitioner removed some of the restaurant's equipment. At that time, however, the fixtures and equipment had little or no value. [2]
On January 22, 1966, the bank transferred petitioners' portion of the balance due on the notes to petitioners' real estate loan account at the bank. The amount transferred totaled $2,375.36, of which $148.16 represented interest. On their joint Federal income tax return for 1966 petitioners claimed a miscellaneous deduction in the amount of $2,271.53 for "Bad Debt Uncollected." In the statutory notice of deficiency respondent disallowed the loss on the basis that petitioners had not established that a debt in fact existed; and that if a debt did exist, petitioners had failed to establish their basis in the debt and that it became worthless in 1966. Opinion Section 166(a)(1) allows a deduction for "any debt which becomes worthless within the taxable year. *260 " It is well settled that the burden of proof is upon petitioners to show not only that a bona fide debt in fact existed, but also that the debt became worthless in the year the deduction was claimed. Sec. 1.166-1(c), Income Tax Regs.; Luke & Fleming, Inc., 1 B.T.A. 12 (1924); Herbert W. Dustin, 53 T.C. 491 (1969), on appeal (C.A. 9, Apr. 6, 1970). Our conclusion is that petitioners have failed to meet their burden of proof on this issue and therefore must be denied the deduction. The evidence consisted of a stipulation of facts, the pertinent parts of which are included in our Findings of Fact above, and a very meager amount of oral testimony by petitioner Warren Reed. Neither party filed written briefs. Hence, it is a bit difficult to tell from the record upon exactly what petitioners base their claim for a bad debt deduction. Apparently petitioners contend that Larson assumed primary liability on the mortgage notes of the petitioners and the Bravermans to the bank when he purchased the A & W Drivein Restaurant, that when Larson failed to make the payments on the notes and the bank called on petitioners and the Bravermans for payment they paid the notes *261 by having their respective share of the obligations on the notes transferred to or added to the balances due on their personal real estate account with the bank, that upon thus satisfying Larson's obligation on the notes Larson became indebted to them, and that this debt became worthless in 1966 when they had to satisfy the obligation by adding it to their real estate account. Even if Larson did assume primary liability for the notes so that petitioners and the Bravermans became secondarily liable and thereafter creditors of Larson when they paid the notes, [3] petitioners are not entitled to a bad debt deduction in 1966, the only year before us. In Donald M. Perry, 49 T.C. 508, 521-522 (1968), we stated: The rule is well established that when a cash basis taxpayer gives a note to satisfy an obligation, a deductible expense does not arise under the income tax laws until the note is paid. Helvering v. Price, 309 U.S. 409; Eckert v. Burnet, 283 U.S. 140, 141; Baltimore Dairy Lunch v. United States, 231 F. 2d 870, 875. Furthermore, the rule has been applied to section 166, bad debt deductions. The courts have not allowed a cash basis *262 taxpayer a deduction for the amount of an unpaid note given to a creditor to evidence taxpayer's intention to fulfill his obligation as guarantor for a third party. This is true even though the note is secured by the taxpayer's property and there is no prospect of the taxpayerguarantor recovering from the primary obligor. Frank Kuhn, 34 B.T.A. 274; Elmer A. Clark, 14 B.T.A. 65; Eckert v. Burnet, supra.
Here, petitioners are clearly cash basis taxpayers. When petitioners transferred their portion of the unpaid balance of the mortgage notes to their personal *263 real estate loan account, they did nothing more than transfer their obligation from one liability account to another. This did not constitute payment of their obligation; nor have petitioners shown that they actually made any 324 payments on the obligation in 1966. Furthermore, even if they did make some payments in 1966, petitioners have not offered a scintilla of evidence to show that their claim against Larson became worthless in 1966. Thus, based upon our decision in Donald M. Perry, supra, and petitioners' failure to carry their burden of proof, we must sustain respondent's determination disallowing a bad debt deduction for 1966. Decision will be entered for the respondent. Footnotes
1. All section references are to the Internal Revenue Code of 1954.↩
2. According to the testimony of petitioner.↩
3. It is not at all clear from the record whether Larson did assume primary liability for the mortgage notes. If he did not, it is possible that he became indebted to petitioner and Albert Braverman for the unpaid balance of the purchase price upon execution of the conditional sales contract. Petitioners would be in no better position, however, since in that case it would appear that the debt became worthless in 1964, the year Larson defaulted in payment, or at least no later than 1965. In any event, petitioner has not proceeded upon this theory and we have consequently not considered it.↩