STANLEY HALLE and CAROLE HALLE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Halle v. Commissioner
Docket No. 28847-81.
United States Tax Court
T.C. Memo 1983-760; 1983 Tax Ct. Memo LEXIS 35; 47 T.C.M. (CCH) 703; T.C.M. (RIA) 83760; December 19, 1983. Werner Strupp, for the petitioners. Warren P. Simonsen, for the respondent. FAY
MEMORANDUM FINDINGS OF FACT AND OPINION FAY, Judge: Respondent determined deficiencies in petitioners' Federal income tax as follows: Year
Deficiency
1973
$31,094.00
1977
23,367.00
After concessions, the issues are (1) whether petitioners are entitled to a bad debt deduction in connection with their guaranty of a certain loan, [1] and if so, (2) whether it is deductible as a business bad debt or a nonbusiness bad debt within the meaning of section 166. [2]
FINDINGS OF FACT Some of the facts are stipulated and found *37 accordingly. Petitioners, Stanley Halle and Carole Halle, resided in Potomac, Md., when they filed their petition herein. Mr. Halle has been engaged in the business of land development and commercial and residential building construction since 1964. From 1965 through 1976, Mr. Halle was president, a 50 percent stockholder, and an employee of Stanley Martin Communities (herein Stanley Martin), a company engaged in the business of developing and constructing property as a general contractor. Mr. Halle's salary from Stanley Martin constituted most of his earned income through 1976. [3] Stanley Martin was dissolved in 1976 and Stanley Halle Communities, Inc. was formed in 1977 to carry on the same activities. Beginning in 1967, petitioners were involved in the formation of several corporations and partnerships (herein the entities) whose purpose was to generate income for Stanley Martin. Petitioners were shareholders or partners in all of the entities. The entities acquired real property and paid Stanley *38 Martin a fee for developing the property and for constructing both residential and commercial buildings. Stanley Martin's fees were determined on a perunit basis. One of the entities, SMC #1, Inc. (herein SMC), was formed on May 31, 1971. Petitioners invested $2,500 in SMC in exchange for 25 percent of its stock. On August 30, 1973, SMC borrowed $2.2 million from Suburban Trust Company in Hyattsville, Md. (herein Suburban) pursuant to a note executed by Mr. Halle on behalf of SMC (herein SMC's note). SMC used the loan proceeds to acquire property in Prince Georges County, Md. All of SMC's shareholders, including petitioners, were required by Suburban to guarantee repayment of the loan, both jointly and severally. [4] Lending institutions always required personal guarantees before lending money to SMC or any of the entities. SMC completed grading streets, installing curbs and sewer pipes, and paving streets on its property. However, in 1975 before housing construction began on the property, SMC incurred operating difficulties and did not meet its mortgage *39 payments. Thus, Suburban was forced to foreclose on SMC's note. After Suburban sold the property, there was remaining a deficiency of $315,970.13 on SMC's note. Since SMC did not have sufficient funds, [5]Suburban held all the shareholders liable for their proportionate share of the deficiency. Petitioners' share of SMC's deficiency was $105,323.38. In satisfaction of this amount, on March 24, 1976, petitioners gave Suburban their personal note for $105,323.38, bearing an interest rate of 8 percent (herein their note). In 1976 and 1977, petitioners made principal payments to Suburban of $1,323.38 and $24,000, respectively, in connection with their note. For all relevant years, petitioners reported their income on the cash basis method of accounting. Based on their note, on their 1976 return petitioners claimed a business bad debt deduction of $105,000. [6] In his notice of deficiency, respondent determined that petitioners were not entitled to deduct the entire amount of their note because they did not actually make a payment of $105,000 in 1976. Furthermore, respondent determined that when petitioners *40 actually make payments, those payments should be treated as nonbusiness bad debts deductible as short-term capital losses. [7]
OPINION The first issue is whether petitioners are entitled to a bad debt deduction in 1976 when they substituted their note in satisfaction of their liability as guarantors of SMC's loan. Petitioners argue that their note was the equivalent of a cash payment because Suburban accepted it in full discharge to a bad debt deduction of $105,000 in 1976. Respondent argues that since petitioners were cash basis taxpayers they were not entitled to a bad debt deduction until they actually made payments to Suburban. For the following reasons, we *41 agree with respondent. It is well established that no deduction for a loss or a bad debt is available to a cash basis taxpayer unless the taxpayer has made an outlay of cash or of property having cash value. Helvering v. Price,309 U.S. 409 (1940); Eckert v. Burnet,283 U.S. 140 (1931). Furthermore, the substitution of a guarantor's personal note for that of the primary obligor, in satisfaction of the guarantor's guaranty, does not constitute such an outlay until the note is actually paid. Perry v. Commissioner,49 T.C. 508, 521-522 (1968); See Rubnitz v. Commissioner,67 T.C. 621, 627 (1977). In the instant case, therefore, petitioners' substitution of their note in satisfaction of their liability to Suburban as guarantors of SMC's note did not constitute payment. Thus, petitioners were not entitled to a bad debt deduction on the basis of that transaction. However, since the parties agree petitioners actually made payments on their note in the total amounts of $1,323.38 in 1976 and $24,000 in 1977, they are entitled *42 to bad debt deductions in 1976 and 1977 to the extent of those payments. [8]
The second issue is whether petitioners' payments on their note are deductible as business or nonbusiness bad debts under section 166. Under section 166(a)(1), a business bad debt gives rise to an ordinary loss deduction. On the other hand, pursuant to section 166(d)(1)(B), a nonbusiness bad debt must be treated as a short-term capital loss subject to the limitations of section 1211. Although section 166(d)(2) defines a nonbusiness bad debt, [9] the question of whether a debt is a business or nonbusiness bad debt is essentially a question of fact, the resolution of which depends upon whether the debt is "proximately" related to the trade or business of the taxpayer. Sec 1.166-5(b), Income Tax *43 Regs.; Imel v. Commissioner,61 T.C. 318, 323 (1973). It is well established that being an employee can be a trade or business for purposes of section 166. Putoma Corp. v. Commissioner,66 T.C. 652, 673 (1976), affd. 601 F.2d 734 (5th Cir. 1979); see also Trent v. Commissioner,291 F.2d 669 (2d Cir. 1961). In determining whether a bad debt had a "proximate" relation to the taxpayer's trade or business as an employee, rather than his investment interest as a shareholder, the Supreme Court has stated that the proper measure is the dominant motivation of the taxpayer in making the loan. United States v. Generes,405 U.S. 93, 103 (1972). Petitioners contend that their dominant motivation for personally *44 guaranteeing SMC's note was to protect Mr. Halle's business income as an employee of Stanley Martin, and, thus, any loss resulting therefrom is deductible as a business bad debt. Respondent contends that petitioners' dominant motivation was nonbusiness, that is, to protect their investment in SMC as shareholders rather than to protect Mr. Halle's income as an employee. For the following reasons, we agree with petitioners. All of the entities in which petitioners had an interest hired Stanley Martin as their general contractor to construct commercial and residential buildings on their property. The entities were not able to borrow money to finance their activities without individual guarantees from their shareholders or partners. The loan proceeds enabled the entities to initially acquire property and subsequently pay Stanley Martin various construction fees. Since Mr. Halle received most of his business income from Stanley Martin as salary, it is evident that most of petitioners' business income was directly related to the success of SMC as well as the other entities in obtaining loans. If the entities were unable to obtain financing, Stanley Martin would not have had any clients, *45 and petitioners' business income would have been significantly reduced. Accordingly, we conclude that petitioners' dominant motivation for guaranteeing SMC's loan was to protect Mr. Halle's income as an employee of Stanley Martin rather than to protect their small investment in SMC. Thus, petitioners' payments were deductible as business had debts under section 166.[10]
*46 To reflect concessions and the foregoing, Decision will be entered under Rule 155.
Footnotes
1. The years in issue are 1973 and 1977 because petitioners' deduction on their 1976 return for the full amount of their personal note resulted in a net operating loss carryback to 1973 and a net operating loss carryforward to 1976. ↩
2. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue.↩
3. Mr. Halle earned total wages of $111,185 in 1973 and $62,540 in 1976. Of those amounts, $98,685 in 1973 and $56,540 in 1976 constituted salary from Stanley Martin.↩
4. Petitioners were two of SMC's six shareholders, and they were liable for one-third of the loan in case of default.↩
5. As of March 31, 1976, SMC had an accumulated deficit of $602,235.↩
6. Petitioners' note was for $105,323.38, however, for an unexplained reason, petitioners only took a business loss deduction of $105,000.00. ↩
7. Petitioners' business loss deduction on their 1976 return resulted in a total ordinary loss of $161,305 for 1976. Thus, petitioners claimed a net operating loss (NOL) $22,101 to 1977. Based on his disallowance of the $105,000 business loss deduction in 1976, respondent disallowed $82,899 of the NOL carryback to 1973 and the entire NOL carryfoward of $22,101 to 1977.↩
8. Respondent agrees that any payments actually made by petitioners to Suburban constituted a worthless (bad) debt within the meaning of sec. 166↩ because there was no chance petitioners would recover any payments from SMC.
9. Sec. 166(d)(2) defines a nonbusiness debt as follows: * * * means a debt other than -- (A) a debt created or acquired (as the case may be) in connection with a trade or business of the taxpayer; or (B) a debt the loss from the worthlessness of which is incurred in the taxpayer's trade or business.↩
10. In his reply brief, respondent for the first time argues that any payments petitioners made to Suburban in satisfaction of their personal guarantee were in fact a contribution of capital to SMC under Sec. 1.166-9(c), Income Tax Regs. However, there is nothing in his notice of deficiency nor in the pleadings raising this issue. This Court has held on several occasions that it will not, and cannot, consider issues which have not been pleaded. See Sicanoff Vegetable Oil Corp. v. Commissioner,27 T.C. 1056, 1065-1066 (1957), Revd. on another issue 251 F.2d 764 (7th Cir. 1958).
In addition, respondent's argument is contrary to statements in his notice of deficiency and in his opening brief wherein he states that petitioners incurred a nonbusiness bad debt deductible as a short-term capital loss under sec. 166(d)(1)(B). If we held that petitioners' payments to Suburban were contributions of capital to SMC, the applicability of sec. 166 would not even be in issue. See Schlumberger Technology Corp. v. United States,443 F.2d 1115, 1122↩ n. 11 (8th Cir. 1971).